**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

HLP PROPERTIES, LLC; WEST 17TH PROPERTY,
LLC; WEST 58TH STREET MINI STORAGE CORP;
and PLH ENTERPRISES, INC.,

No. 14-CV-1383 (LGS)

Plaintiffs,

v.

CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC.,

Defendant.

-----------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Elizabeth Knauer
Jeffrey B. Gracer
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York 10022
Phone: (212) 421-2150
eknauer@sprlaw.com
jgracer@sprlaw.com

Randy M. Mastro
Jennifer H. Rearden
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166
Phone: (212) 351-4000
rmastro@gibsondunn.com
jrearden@gibsondunn.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................4

    A.  Con Edison Contaminated the Site for More Than 60 Years ...........................4

    B.  The BCP's Purpose: Encourage Remediation
        And Development of Contaminated Sites.........................................................5

    C.  A BCA Is Purely Voluntary and Terminable At Will
        by the Applicant...............................................................................................6

    D.  The Liability Limitation under the BCP Is Not Available Until
        After DEC Issues a COC ..................................................................................6

    E.  After Opposition by Con Edison and Litigation with the State,
        The BCA Plaintiffs Entered Into the BCP on December 31, 2010...................7

    F.  Plaintiffs Have Spent Millions of Dollars To Date and Will Spend
        Millions More ..................................................................................................8

ARGUMENT .............................................................................................................9

POINT I
PLAINTIFFS PROPERLY STATE A CLAIM
UNDER CERCLA SECTION 107 .........................................................................9

POINT II
TO THE EXTENT THE BCA PLAINTIFFS HAVE A CLAIM
UNDER CERCLA § 113(f)(3)(B), SUCH CLAIM IS TIMELY ........................13

    A.  The State Court Decision Did Not Trigger the Section 113
        Limitations Period..........................................................................................13

    B.  Any Section 113(f)(3)(B) Claim Arose No Earlier Than the
        BCA's Effective Date .....................................................................................16

**TABLE OF CONTENTS**

POINT III
PLAINTIFFS' STATE COMMON LAW CLAIMS SHOULD
NOT BE DISMISSED ...........................................................................20

    A.  Plaintiffs' State Common Law Claims Are Not Preempted
       by CERCLA...............................................................................20

    B.  Plaintiffs' Indemnification Claim Is Not Barred
       by Unsupported Allegations of "Fault" ....................................21

    C.  The Need to Remediate the Site Supports Plaintiffs'
       Restitution Claim ......................................................................22

    D.  Plaintiffs May Seek a Declaratory Judgment as to Future
       Costs under State Law .............................................................23

POINT IV
THE CLAIMS OF PLAINTIFFS WEST 58TH AND PLH SHOULD NOT
BE DISMISSED ...................................................................................24

CONCLUSION..................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*145 Kisco Ave. Corp. v. Dufner Enterprises, Inc.,*
198 A.D.2d 482 (2d Dep't 1993) ......................................................................23

*55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.,*
885 F. Supp. 410 (E.D.N.Y. 1994) ...............................................................22, 23

*Alloy Briquetting Corp. v. Niagara Vest, Inc.,*
756 F. Supp. 713 (W.D.N.Y. 1991) ...............................................................23

*AmeriPride Servs., Inc. v Val. Indus. Serv., Inc.,*
No. CIV. S-00-113 (LKK/JFM), 2011 WL 1833179 (E.D. Cal, May 12, 2011) ..............13

*B.F. Goodrich Co. v. Murtha,*
958 F.2d 1192 (2d Cir. 1992)...........................................................................9

*Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.,*
522 U.S. 192 (1997)........................................................................................15

*Bedford Affiliates v. Sills,*
156 F.3d 416 (2d Cir. 1998)...........................................................10, 20, 21

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)......................................................................................24

*Chase Manhattan Bank, N.A. v. T & N PLC,*
905 F. Supp. 107 (S.D.N.Y. 1995) ...............................................................23

*Chase Manhattan Bank, N.A. v. T & N PLC,*
No. 87-CV-4436 (JGK), 1996 WL 603934 (S.D.N.Y. Oct. 22, 1996),
*aff'd,* 162 F.3d 1147 (2d Cir. 1998) ...............................................................23

*Chitayat v. Vanderbilt Assocs.,*
702 F. Supp. 2d 69 (E.D.N.Y. 2010) ...........................................................19, 21

*City of New York v. Lead Indus. Ass'n, Inc.,*
222 A.D.2d 119 (1st Dep't 1996) ...............................................................23

*Consol. Edison Co. of N.Y., Inc. v. UGI Utilities, Inc.,*
423 F.3d 90 (2d Cir. 2005)...........................................................................12

*Cooper Industries, Inc. v. Aviall Services, Inc.,*
543 U.S. 157 (2004)................................................................................14, 15

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Cromwell v. New York City Health & Hosps. Corp.,*
No. 12-CV-4251, 2013 WL 5637752 (S.D.N.Y. Oct. 16, 2013) ......................................21

*Durham Mfg. Co. v Merriam Mfg. Co.,*
294 F. Supp. 2d 251 (D. Conn 2003) ...............................................................................15

*DVL, Inc. v. Gen. Elec. Co.,*
811 F. Supp. 2d 579 (N.D.N.Y. 2010),
*aff'd sub nom. DVL, Inc. v. Niagara Mohawk Power Corp.,*
490 F. App'x 378 (2d Cir. 2012) ......................................................................................21

*Futerfas v. Shultis,*
209 A.D.2d 761 (3d Dep't 1994) ......................................................................................22

*Goonan v. FRB of N.Y.,*
916 F. Supp. 2d 470 (S.D.N.Y. 2013) ..............................................................................9

*Gould Inc. v. A&M Battery and Tire Service,*
901 F.Supp. 906 (M.D. Pa. 1995),
*vacated on other grounds*, 232 F.3d 162 (3d Cir. 2000) ...................................................15

*Greenwich LLC v. N.Y. Dep't of Envtl. Conservation,*
14 Misc. 3d 417 (Sup. Ct. N.Y. Cnty 2006) .....................................................................18

*Gussack Realty Co. v. Xerox Corp.,*
224 F.3d 85 (2d Cir. 2000)................................................................................................20

*Heimeshoff v. Hartford Life & Acc. Ins. Co.,*
134 S. Ct. 604 (2013) .......................................................................................................15

*HLP Props., LLC v. N.Y. Dep't of Env't Conservation,*
21 Misc. 3d 658 (Sup. Ct. N.Y. Cty. 2008),
*aff'd*, 70 A.D.3d 469 (1st Dep't 2010)..................................................................... passim

*Hobart Corp. v. Waste Mgmt. of Ohio, Inc.,*
840 F. Supp. 2d 1013 (S.D. Ohio 2011) ...........................................................................15

*Hope v. Cortines,*
872 F. Supp. 14 (E.D.N.Y. 1995),
*aff'd*, 69 F.3d 687 (2d Cir. 1995)......................................................................................12

*In re E. Riv. Realty Co., LLC v. N.Y. State Dep't of Env't Conservation,*
22 Misc. 3d 404 (Sup. Ct. N.Y. Cnty 2008),
*aff'd*, 68 A.D.3d 564 (1st Dep't 2009)................................................................5, 17, 18

iv

# TABLE OF AUTHORITIES

**CASES**                                         **PAGE(S)**

*In re Joint E. & S. Dist. Asbestos Litig.*,
14 F.3d 726 (2d Cir. 1993) .............................................................................20

*Ins. Co. of N. Am. v. Gee*,
702 F.2d 411 (2d Cir. 1983) .............................................................................12

*Key Tronic Corp. v. U.S.*,
511 U.S. 809 (1994) ........................................................................................13

*LWD PRP Grp. v. ACF Indus., LLC*,
No. 5:12-CV-00127 (JHM), 2014 WL 901648 (W.D. Ky. Feb. 7, 2014) .......13

*Major v. Astrazeneca, Inc.*,
No. 5:01CV618 (FJS/GJD), 2006 WL 2640622 (N.D.N.Y. Sept. 13, 2006) ...21

*Manor Care, Inc. v. Yaskin*,
950 F.2d 122 (3d Cir. 1991) ............................................................................21

*Marcinski v. RBS Citizens Bank, N.A.*,
No. 13-CV-06022 (LGS), 2014 WL 1757411 (S.D.N.Y. May 2, 2014) ..........19

*Mas v. Two Bridges Associates*,
75 N.Y.2d 680 (1990) ......................................................................................22

*MPM Silicones, LLC v. Union Carbide Corp.*,
931 F. Supp. 2d 387 (N.D.N.Y. 2013) ............................................................21

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
723 F.3d 192 (2d Cir. 2013) ............................................................................22

*Nat'l R.R. Passenger Corp. v. New York City Hous. Auth.*,
819 F. Supp. 1271 (S.D.N.Y. 1993) ................................................................23

*New York v. Ametek, Inc.*,
473 F. Supp. 2d 432 (S.D.N.Y. 2007) .............................................................21

*New York v. Hickey's Carting*,
380 F.Supp.2d 108 (E.D.N.Y.2005) ..........................................................21, 23

*New York v. Next Millennium Realty, LLC*,
No. 03-CV-5985(SJF)(MLO), 2007 WL 2362144 (E.D.N.Y. Aug. 14, 2007) ...............21

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*New York v. Solvent Chem. Co., Inc.,*
685 F. Supp. 2d 357 (W.D.N.Y. 2010),
*aff'd & rev'd in part,* 664 F.3d 22 (2d Cir. 2011)............................................................15

*New York v. Westwood-Squibb Pharm Co., Inc.,*
No. 90-CV-1324C, 2004 WL 1570261 (W.D.N.Y. 2004) ...............................................10

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,*
673 F.3d 84 (2d Cir. 2012)..............................................................................................23

*Niagara Mohawk Power Corp. v. Chevron U.S.A. Inc.,*
596 F.3d 112 (2d Cir. 2010)..................................................................................... passim

*Reichhold Chemicals, Inc. v. Textron, Inc.,*
888 F. Supp. 1116 (N. D. Fla. 1995)................................................................................16

*Rosen v. Mega Bloks Inc.,*
No. 06-CV-3474 (LTS/GWG), 2009 WL 929474 (S.D.N.Y. Apr. 7, 2009),
*report and recommendation adopted,* 2009 WL 1392538
(S.D.N.Y. May 19, 2009)...........................................................................................23, 24

*RSR Corp. v. Commercial Metals Co.,*
496 F.3d 552, 558 (6th Cir. 2007) ...................................................................................15

*Seneca Meadows, Inc. v. ECI Liquidating, Inc.,*
427 F. Supp. 2d 279 (W.D.N.Y. 2006) ............................................................................19

*Solvent Chem. Co. ICC Indus., Inc. v. E.I. Dupont De Nemours & Co.,*
242 F. Supp. 2d 196 (W.D.N.Y. 2002) ............................................................................21

*Sweet v. Texaco, Inc.,*
67 A.D.3d 1322 (4th Dep't 2009)....................................................................................23

*U.S. v. Atlantic Research Corp.,*
551 U.S. 128 (2007)........................................................................................................14

*U.S. v. Pharmacia Corp.,*
713 F. Supp.2d 785 (2010) ..............................................................................................13

*U.S. v. Scott's Liquid Gold, Inc.,*
934 F.Supp. 362 (D. Colo. 1996)....................................................................................15

*Volunteers of Am. of W.  New York v. Heinrich,*
90 F. Supp. 2d 252 (W.D.N.Y. 2000)..............................................................................21

**CASES** PAGE(S)

*W.R. Grace & Co.-Conn. v Zotos Int'l, Inc.*,
No. 98-CV-8385(F), 2000 WL 1843282 (W.D.N.Y. Nov. 2, 2000) ................................15

*W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*,
559 F.3d 85 (2d Cir. 2009)........................................................................................10, 12

*Washington v. Kellwood Co.*,
No. 05-CV-10034 (DAB), 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009).........................10


**STATUTES**

42 U.S.C.
    § 9607.................................................................................................................10, 14
    § 9613.................................................................................................................. passim
    § 9614.........................................................................................................................20
    § 9622.........................................................................................................................14

28 U.S.C § 2201 ...........................................................................................................20, 23


N.Y. Envtl. Conserv. Law
    § 27-1405 ........................................................................................................5, 16, 22
    § 27-1407 ................................................................................................................5, 6
    § 27-1409 ...................................................................................................................6
    § 27-1411 ...................................................................................................................5
    § 27-1419 ...................................................................................................................6
    § 27-1421 ...................................................................................................3, 7, 12, 16

N.Y. Tax Law § 21-23 .......................................................................................................7

**OTHER AUTHORITIES**

6 N.Y. Comp. Codes R. & Regs.
    § 375-1.5 ..............................................................................................................12, 19
    § 375-1.9 ................................................................................................................6, 17
    § 375-2.5 ...................................................................................................................6
    § 375-3.5 ...............................................................................................................6, 12
    § 375-3.7 ...................................................................................................................6
    § 375-3.9 ...................................................................................................................7

# TABLE OF AUTHORITIES

**OTHER AUTHORITIES**           **PAGE(S)**

2008 Sess. Law News of N.Y. Ch. 390 (S. 8717) (McKinney's) .........................................8

Fed. R. Civ. P. 12(b)(1) .............................................................................................9, 21, 22

<u>**PRELIMINARY STATEMENT**</u>

This case concerns a huge utility company, with a long and checkered history of polluting sites on which it operated manufacturing gas plants ("MGPs"), trying to avoid paying to clean up its admitted contamination of Plaintiffs' property in West Chelsea (the "Site"). For more than six decades, Defendant Consolidated Edison Company of New York, Inc. (collectively, with its corporate predecessors, "Con Edison") operated an MGP on the Site and profited from operations that resulted in the release and disposal of massive amounts of coal tar and other hazardous substances into the soil and groundwater there—a fact that Con Edison concedes. (*See*, *e.g.*, Complaint ("Compl.") ¶¶ 1-4, 15, 22-29.) As Con Edison also concedes, Plaintiffs already have incurred and will continue to incur many millions of dollars to remediate the substantial contamination that Con Edison caused. (*See*, *e.g.*, *id.* ¶¶ 6-7.)

Yet rather than discharge its obligations to compensate Plaintiffs for these response costs and follow through on its commitment over a decade ago to the New York State Department of Environmental Conservation ("DEC") to voluntarily pay for the cleanup of the Site, Con Edison dragged its feet. Now, taking a page from the classic polluters' playbook, it attempts to shirk its responsibility altogether with a spurious statute of limitations defense and a misreading of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). In addition, Con Edison has already announced its intention, when it loses this motion, to pursue a "scorched earth" strategy of seeking to burden Plaintiffs with costly, unnecessary discovery, and proposing to implead other, yet-to-be-identified parties that Con Edison now claims, for the first time, may be liable for the contamination. This attempt to try to deflect blame from itself as the polluter is a blatant effort to delay Con Edison's inevitable obligation under CERCLA to pay for all or almost all of the cleanup costs necessitated by its own polluting acts.

In an effort to obscure the weakness of its motion, Con Edison even attempts to mislead this Court into believing that Plaintiffs seek to force Con Edison to "act as duplicate suretors for the same cleanup" that will be paid for by "the State and its taxpayers." (Memorandum of Law in Support of Con Edison's Motion to Dismiss, dated Apr. 28, 2014 ("Def. Br.") 2.) In reality, the Brownfield Cleanup Program ("BCP") provides remedial tax credits equal to a fraction of the actual remediation expenses of the remediating party. *See* N.Y. Tax Law § 21. Con Edison also fails to disclose that the same state court decision upon which it relies for its statute of limitations defense specifically rejected the very argument Con Edison now makes here. There, the state court expressly noted that Plaintiffs would not receive a "windfall" by recovering both the tax credits available under the BCP and some portion of their response costs from Con Edison. *In re HLP Props., LLC v. New York State Dep't of Envtl.. Conservation*, 21 Misc. 3d 658, 671 (Sup. Ct. N.Y. Cnty. 2008), *aff'd*, 70 A.D.3d 469 (1st Dep't 2010).[1] Indeed, it is Con Edison that seeks the "windfall" here, trying to avoid any liability for its own polluting acts.

Against this backdrop, Con Edison advances legal arguments that fall far short of the mark. First, Con Edison argues that Plaintiffs have "resolved" their CERCLA liability by participating

---

[1] The state court explained that its decision "is not to suggest that petitioners would be entitled to a 'windfall' of economic tax breaks. The tax credits, by statute, are inextricably linked to the amount expended by the parties responsible for the actual cleanup of the property. As such, it is expected that any credits to which petitioners may be entitled in the future would be based upon their share of the actual remediation of the property site." *HLP Props.*, 21 Misc. 3d at 671. In other words, whatever remediation credit any of the Plaintiffs receives will be directly proportionate to the actual costs that they bear. If Con Edison pays the lion's share of the cost—as it should—the remediation tax credits the Plaintiffs who executed the Brownfield Cleanup Agreement (the "BCA Plaintiffs") receive will be reduced accordingly. Con Edison's response to this reality is to complain that the BCA Plaintiffs may potentially receive lucrative economic development-related tax credits. But that is of no moment, because, as the state court recognized, the BCP "was designed to encourage" not only "the voluntary cleanup of hazardous waste sites," but also "the restoration of those sites to productive use and, in many instances, the tax roll." *Id.* at 662. In light of the State Legislature's decision to incentivize property owners to invest in economic development, Con Edison cannot properly complain that the BCA Plaintiffs, if they are ever able to develop the Site, may receive the benefit of additional tax credits afforded by the State Legislature relating to economic development for the development costs they incur, particularly since such costs are not at issue in this litigation and Plaintiffs do not seek to recover them from Con Edison in any event.

in the BCP and, therefore, that Plaintiffs' CERCLA claim must be brought only under Section 113 of CERCLA, rather than Section 107 (which generally applies to voluntary cleanups). (Def. Br. 8-12.) To the contrary, the plain language of the BCP statute and the express terms of the Brownfield Cleanup Agreement ("BCA") executed by the BCA Plaintiffs provide that an applicant's liability to the State is only resolved after the DEC has issued a certificate of completion ("COC"), which has not happened yet, as Plaintiffs continue to pay to clean up Con Edison's contamination at the Site.[2] By the BCA's express terms—terms that Con Edison conveniently excludes from the excerpt it attaches to its motion to dismiss—the BCA Plaintiffs, who are participating in the BCP as "Volunteers," can unilaterally terminate the BCA (and opt not to complete the remediation, obtain a COC, or be entitled to the liability limitation) at any time.[3] Accordingly, the BCA does not and cannot resolve any liability until the remediation is fully performed. If the BCA Plaintiffs have a claim under CERCLA § 107, Con Edison's motion to dismiss necessarily fails, because it does not assert that their Section 107 claim is time-barred.

Con Edison attempts to shoehorn Plaintiffs' CERCLA claims into a single Section 113 claim for one reason alone—in order to make an unavailing argument that this claim is barred by the statute of limitations. (Def. Br. 12-19.) But the statute is very clear: the limitations period applicable to a Section 113 claim only begins once "a cost recovery settlement" is entered with the federal government, or "a judicially approved settlement" is in place. *See* 42 U.S.C. § 9613(g)(3). Neither of those events has occurred here. Con Edison baselessly asserts that the limitations period for this Section 113 claim commenced at the time the state court "direct[ed] acceptance of" the BCA Plaintiffs' "property into the [BCP] program." (Def. Br. 12-18 (citing

---

[2] *See* N.Y. Environmental Conservation Law ("ECL") § 27-1421; (Declaration of Elizabeth Knauer, dated Jun. 2, 2014 ("Knauer Decl."), Ex. A (BCA App. A), § VI.)
[3] (Affidavit of Thomas Kavaler, sworn to Apr. 28, 2014 ("Kavaler Aff."), Ex. C (BCA), § I; Knauer Decl., Ex. A (BCA App. A), § XII (citing 6 NYCRR § 375-3.5(b)).)

*HLP Props*, 70 A.D.3d at 469).) However, DEC did not actually admit the BCA Plaintiffs into the program until ten months later, on December 31, 2010, when the BCA became effective—which means this action was timely brought. According to Con Edison, the date of the state court's decision in *HLP Props.*—before the terms of the BCA had been set and the Agreement executed—is somehow the point at which Plaintiffs resolved their CERCLA liability and their Section 113 claim accrued. Con Edison's position is absurd and unprecedented. No case has ever found a viable Section 113 claim based on anything other than a fully executed agreement with the government. Thus, this case cannot be time-barred.[4]

Finally, Con Edison's half-hearted arguments seeking dismissal of Plaintiffs' other claims (Def. Br. 19-24) likewise lack any legal basis and should be summarily rejected. Plaintiffs' common-law claims are, under well-settled law, not preempted by CERCLA because they only seek damages for non-CERCLA recoverable costs. (Compl. ¶¶ 111, 118.) The Complaint adequately pleads those common law claims, as well as the CERCLA claims of the Plaintiffs who did not enter into the BCA but nevertheless incurred response costs (the "Non-BCA Plaintiffs"). Accordingly, Con Edison's motion to dismiss fails in its entirety.

## STATEMENT OF FACTS

A.    Con Edison Contaminated the Site for More Than 60 Years

From 1834 through the early 1900s, Con Edison owned and operated the Site as part of its West 18th Street Gas Works, a large MGP that was used to convert coal into combustible gas. (Compl. ¶¶ 23, 25.) The Site housed the main gas production facilities for the Gas Works. (*Id.* ¶ 27.) The primary byproduct of the MGP was coal tar, a complex mixture of hazardous substances. (*Id.* ¶ 28.) In May 1983, Edison Mini Storage Corp. ("EMSC"), the predecessor of

---

[4] Because Con Edison is so clearly wrong on its Section 113 statute of limitations argument, the Court can dispose of this motion on that basis alone, without needing to reach the fact-sensitive question of whether Plaintiffs may assert a claim under Section 107 or 113 of CERCLA, or both.

Plaintiff PLH Enterprises Inc. ("PLH"), purchased the Site, which has been operated as a surface parking lot ever since.[5] In 1999, EMSC learned that the Site was contaminated with coal tar. (Knauer Decl., Ex. C (2007 RIR), §§ 3.5-3.7.) Multiple subsequent studies, including those conducted by Con Edison, have confirmed the presence of MGP contamination in soils and groundwater at levels well in excess of applicable state cleanup standards. (Compl. ¶¶ 29, 39.)

B.    The BCP's Purpose: Encourage Remediation and Development of Contaminated Sites

The New York State Brownfield Cleanup Act of 2003 established the BCP to encourage not only "the voluntary cleanup of hazardous waste sites," but also "the restoration of those sites to productive use and, in many instances, the tax roll." *HLP Props.,* 21 Misc. 3d at 662. The BCP codified, and in certain respects expanded, protections that had been offered to parties that completed remediation under the non-statutory Voluntary Cleanup Program ("VCP"), and provided financial incentives for brownfield remediation and redevelopment in the form of tax credits. *See id.* at 663; *In re E. Riv. Realty Co., LLC v. N.Y. State Dep't of Envtl. Conservation,* 22 Misc.3d 404, 406-07 (Sup. Ct. N.Y. Cnty. 2008), *aff'd,* 68 A.D.3d 564 (1st Dep't 2009).

Parties may participate in the BCP either as a "Participant," defined as a party that is directly responsible for the contamination, or as a "Volunteer," defined to include "a person whose liability arises solely as a result of such person's ownership or operation of or involvement with the site subsequent to the disposal or discharge of contaminants" who "exercises appropriate care with respect to contamination found at the facility." ECL §§ 27-1405(1)(a), (1)(b). When a Volunteer proceeds with remediation under the BCP, the actual polluters are not excused from their underlying legal obligations to pay for the remediation. *See* ECL § 27-1411(5).

---

[5] Plaintiff West 58th Street Mini Storage Corp. ("West 58th") owned the Site between 2002 and 2004. Plaintiff HLP Properties, LLC ("HLP") is the Site's current owner. (Compl. ¶¶ 30-32.)

C.    A BCA Is Purely Voluntary and Terminable At Will by the Applicant

A party intending to participate in the BCP must file a request for participation with DEC.
ECL § 27-1407.  If DEC accepts the request, the applicant must enter into a BCA with DEC.
ECL § 27-1409; 6 NYCRR § 375-3.5.  Pursuant to DEC guidance, copies of the unexecuted
BCA are typically sent with a letter accepting a request to participate.  (Knauer Decl., Ex. B
(DER-32), at § D(3).)  If the entity fails to execute and return the BCA to DEC within 60 days,
DEC will consider the request "withdrawn without prejudice and the offer to enter the BCP will
be deemed rescinded."  (*Id*. at § F(3).)  The BCA is effective only after it is executed by DEC.
(*Id*. at § E(5).)  It sets forth procedures for investigation and remediation under DEC oversight.
ECL § 27-1409(8).  (*See also* Knauer Decl., Ex. B (DER-32), App. A.)

DEC regulations expressly provide that a BCA is a purely voluntary agreement that "[t]he
applicant may terminate . . . at any time and for any reason" on 15 days' notice.[6]  6 NYCRR
§ 375-3.5(b).  This termination provision distinguishes BCAs from DEC orders that DEC uses to
administer other remedial programs.  *See* 6 NYCRR § 375-1.5 (no voluntary termination
provision in general rules for remedial orders and agreements); 6 NYCRR § 375-2.5 (same
regarding rules for orders for Inactive Hazardous Waste Disposal Sites).

D.    The Liability Limitation under the BCP Is Not Available Until After DEC Issues a COC

Upon DEC's determination that a brownfield site has been satisfactorily remediated in
accordance with statutory standards and approved work plans, the BCA signatory, and only the
BCA signatory for that site, is issued a COC.  ECL § 27-1419; 6 NYCRR § 375-1.9(b).  The two

---

[6] The regulations allow such termination unless it "would pose an immediate threat to public health or the
environment" or would leave the site in worse environmental condition.  6 NYCRR § 375-3.5(b).  If a
BCP applicant terminates a BCA for a site that has been designated a "significant threat to human health
or the environment" then that site will be included on the state registry of inactive waste disposal sites,
enabling DEC to issue an order requiring a responsible party—here, Con Edison—to complete a DEC-
determined remedy.  *See* 6 NYCRR §§ 375-3.7(b)(2), 375-2.5(a).

principal benefits available to COC recipients are a statutory limitation on potential liability to New York State and tax credits. By the express terms of the statute, the BCP's liability limitation does not attach until "after the department has issued a [COC]," at which point:

> the applicant shall not be liable to the state upon any statutory or common law cause of action, arising out of the presence of any contamination in, on or emanating from the brownfield site *that was the subject of such certificate at any time before the effective date of a [BCA] entered into pursuant to this title*….

ECL § 27-1421(1) (emphasis added).[7] Thus, not only does the liability limitation not attach until the COC is issued, but the extent of the limitation is itself defined by the effective date of the BCA. COC recipients are also eligible for separate tax credits related to (1) the cost of remediation and (2) certain redevelopment costs, to the extent any such costs are incurred and the development is placed in service within 10 years of the COC. *See* N.Y. Tax Law §§ 21-23.

E.     After Opposition by Con Edison and Litigation with the State,
       The BCA Plaintiffs Entered Into the BCP on December 31, 2010

In response to pressure from DEC, Con Edison entered into a Voluntary Cleanup Agreement ("VCA") in 2002 to investigate and remediate a large number of former MGP sites, including the Site, under the VCP. *HLP Props.*, 21 Misc. 3d at 664. After the BCP was enacted in 2003, EMSC and West 58th applied to participate. *Id*. Con Edison objected. *Id*. In 2007, after further discussions with Con Edison—and as the Site had not been remediated by Con Edison under the now five-year-old VCA—EMSC, HLP, and West 17th Street Development, LLC ("West 17th Street") submitted a new BCP application, in conjunction with a concurrent application by Con Edison. *Id*. DEC rejected those applications on the purported ground that the Site did not qualify as a "brownfield site." *Id*. EMSC, HLP, and West 17th Street challenged that decision, but Con Edison chose not to join the litigation. *Id.* at 667 n.16. In February 2010,

---

[7] *See also* 6 NYCRR § 375-3.9 (b) ("Subsequent to the issuance of a [COC], the applicant shall be entitled to the liability limitation protections set forth at ECL 27-1421 . . . .").

the First Department upheld the lower court ruling that directed DEC to accept EMSC, HLP, and West 17th Street into the BCP. *HLP Props.*, 70 A.D.3d at 469.

During the pendency of *HLP Props.*, legislation amending the BCP to reduce the potential tax credits available for sites accepted into the BCP after June 28, 2008 was passed. 2008 Sess. Law News of N.Y. Ch. 390 (S. 8717) (McKinney's). Accordingly, Plaintiffs' counsel requested that the court clarify that EMSC, HLP, and West 17th Street would be entitled to participate in the BCP under the provisions applicable at the time their application was denied. (Kavaler Aff., Ex. A at 1-2.) In so doing, Plaintiffs' counsel quoted a recent case involving DEC's exclusion of another site from the BCP, where the court directed admission of *that particular plaintiff* into the BCP "*nunc pro tunc.*" (Kavaler Aff., Ex. A at 2, Ex. E.) The court in *HLP Props.* did not issue an order deeming EMSC, HLP, and West 17th Street admitted into the BCP, much less admitted *nunc pro tunc*; instead, it ordered DEC to accept their request to participate under provisions that were in effect prior to the statutory amendment. *HLP Props.*, 21 Misc. 3d at 671.

EMSC was succeeded through merger by PLH, which elected not to participate in the BCP. (Compl. ¶¶ 9, 12; Kavaler Aff., Ex. C (BCA).) West 17th Street subsequently changed its name to West 17th Property. (Compl. ¶ 10.) The BCA Plaintiffs (i.e., HLP and West 17th Property) submitted a new BCP application to DEC to reflect these changes in the parties. (Kavaler Aff., Ex. C (BCA), at 1.) The BCA Plaintiffs, as Volunteers, entered into a BCA with DEC that, by its terms, became effective when DEC executed it, on December 31, 2010. (*Id.*)

F.    Plaintiffs Have Spent Millions of Dollars To Date and Will Spend Millions More

Plaintiffs first identified MGP contamination at the Site in 1999-2000. (Knauer Decl., Ex. C (2007 RIR), §§ 3.5-3.7.) As the successive owners of the Site during the relevant time, West 58th and PLH incurred costs in initially investigating the Site, as well as in reviewing and

commenting on Con Edison's submissions to DEC under the auspices of the Con Edison VCA. (*See* Compl. ¶ 80.)

After entering into the BCA, Plaintiff HLP prepared multiple work plans and reports for DEC approval, as required under the BCA. (*Id*. ¶¶ 50-52, 56.) In May 2012, DEC approved the proposed remedy for the Site and determined that the unremediated Site posed a "significant threat to human health or the environment." (*Id*. ¶¶ 52, 53, 55.) HLP commenced remedial activities in 2012, and remediation is ongoing. (*Id*. ¶¶ 56, 63.) Collectively, Plaintiffs have expended millions of dollars in response costs and expect to spend no less than $24 million remediating the Site. (*Id*. ¶¶ 9, 64-66.) Con Edison has not agreed to reimburse Plaintiffs for any of their costs. On December 30, 2013, Plaintiffs and Con Edison entered into a tolling agreement that was in effect until the Complaint was filed. (Def. Br. 12, n.10.)

## ARGUMENT

Under Rule 12(b)(6), the court accepts as true the "well-pleaded factual allegations in the complaint" and only dismisses the action if those allegations fail to "'state a claim to relief that is plausible on its face.'" *Goonan v. FRB of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this well-established standard, Con Edison's motion fails.[8]

## POINT I

## PLAINTIFFS PROPERLY STATE A CLAIM UNDER CERCLA SECTION 107

One of CERCLA's principal purposes is to ensure that those responsible for pollution pay for its remediation. *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992).

---

[8]Although Con Edison purports to bring its motion "pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) for failure to state a claim upon which relief can be granted" (Def. Br. 1), it does not claim that the Court lacks subject matter jurisdiction, and, accordingly, Rule 12(b)(1) is inapplicable. *See* Fed. R. Civ. P. 12(b)(1) (regarding the defense of "lack of subject-matter jurisdiction").

Accordingly, courts have repeatedly imposed liability solely or predominantly on the polluter—here, Con Edison—no matter what other equitable considerations may come into play.[9] Section 107 of CERCLA allows any person who incurs "the costs of response" related to the remediation of hazardous substances to recover those costs from the parties who are responsible for the contamination. 42 U.S.C. § 9607(a). Section 113(f)(3)(B) allows a party to seek contribution from any party responsible for the contamination if the plaintiff has "resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement," provided the defendant has not already entered into such a settlement of its own, as a Section 113(f)(3)(B) settlement also protects the settling party against contribution actions by other parties. 42 U.S.C. §§ 9613(f)(2) and (f)(3)(B).

As explained further below, all of Plaintiffs' CERCLA claims are best characterized as Section 107 claims. The Complaint pleads a Section 113 contribution claim in the alternative, only to the extent that costs are not recoverable under Section 107. (Compl. ¶ 87.) Contrary to Con Edison's assertion, in pleading distinct and alternative claims, the BCA Plaintiffs have not "admitted" any resolution of CERCLA liability defeating their Section 107 claim. *See Washington v. Kellwood Co.*, No. 05-CV-10034 (DAB), 2009 WL 855652, *10 (S.D.N.Y. Mar. 24, 2009) ("Federal Rule of Civil Procedure 8(e)(2) sets forth lenient provisions for alternative

---

[9] *See, e.g., Bedford Affiliates v. Sills*, 156 F.3d 416, 429 (2d Cir. 1998) (polluter allocated 95% of cleanup costs), *abrogated in part on other grounds, W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 90 (2d Cir. 2009); *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 616 (7th Cir. 1998) (affirming district court's decision that defendant polluter was "100 percent responsible for the costs of cleaning up the site," although the plaintiff property owner had contributed to the pollution on the site through "spills" that "may have been too inconsequential to affect the cost of cleaning up significantly"); *New York v. Westwood–Squibb Pharm. Co. Inc.*, 90–CV–1324C, 2004 WL 1570261, *22 (W.D.N.Y. May 25, 2004) (allocating 90% of cleanup costs to the defendant polluter as "the primary source of the hazardous waste problem which required remediation"; "'basic principles of equity' would suggest that the party that profited for 53 years from the creation and operation of a waste-producing enterprise 'should bear primary responsibility for the hazardous byproducts of its activity'") (citation omitted).

pleadings . . . . 'A party may set forth two or more statements of a claim . . . alternately or hypothetically . . . .'").

Initially, there is no basis in fact or law for Con Edison's assertion that the BCA Plaintiffs may only pursue a claim under CERCLA § 113 because the state court order in *HLP Props.* somehow qualified as an administrative or judicially approved settlement resolving CERCLA liability.  (Def. Br. 8-9, n.7.)  Indeed, even the voluntary BCA (the only agreement Plaintiffs have entered into with the government relating to the remediation of the Site) fails to qualify as a settlement of CERCLA liability.  In pressing its point, Con Edison relies on *Niagara Mohawk Power Corp. v. Chevron U.S.A. Inc.*, 596 F.3d 112, 127-28 (2d Cir. 2010), in which a binding consent order entered into with DEC to resolve an enforcement action against Niagara Mohawk ("NiMo") was found to constitute a Section 113(f)(3)(B) settlement.  (Def. Br. 8-10.)  But that order *bound* NiMo to complete the remediation required thereunder, which would lead to "a release of liability upon the future completion of NiMo's remedial activities," (*Id.* 10), and it imposed stipulated daily penalties should NiMo fail to complete the remediation.  *Niagara Mohawk*, 596 F.3d at 118; (Kavaler Aff., Ex. B at 2.)  Additionally, the order provided that even payment of penalties for violations thereof would "not in any way alter Respondent's obligation to complete performance under [its] terms."  (Kavaler Aff., Ex. B at 9.)  In exchange for its promise to undertake the remedial work, NiMo obtained a release and covenant not to sue. NiMo thus resolved its liability at the time the consent order was effective, even though the release would not come into effect until the binding obligations had been fulfilled.[10]

The Second Circuit has held that other remedial agreements with DEC, including the 2002

---

[10] The consent orders at issue in the other cases cited by Con Edison on the issue of a "future release" similarly imposed binding obligations that provided present consideration for the promised release.  (Def. Br. 10-11 (citing *Chitayat v. Vanderbilt Assocs.*, 702 F. Supp. 2d 69, 74-75 (E.D.N.Y. 2010); *Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 427 F. Supp. 2d 279, 283 (W.D.N.Y. 2006)).)

Con Edison VCA and a consent order with narrower terms than those present in *Niagara Mohawk*, do not resolve CERCLA liability. *See W.R. Grace*, 559 F.3d at 91; *Consol. Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 96-97 (2d Cir. 2005). Thus, it is simply not the case that any cleanup agreement whatsoever can serve as the basis for a Section 113(f)(3)(B) claim. Here, for example, in stark contrast to the consent order in *Niagara Mohawk*, the BCA is a voluntary agreement that can be terminated at any time without penalty. (*See* Knauer Decl., Ex. A (BCA App. A), § XII); 6 NYCRR § 375-3.5(6) ("The applicant may terminate a brownfield site cleanup agreement at any time and for any reason."). By design and by its express terms, the BCA is an entirely voluntary, at-will agreement. It provides nothing more than DEC's agreement that *if* the BCA Plaintiffs successfully undertake a BCP remediation, and *if* they receive a COC, then, and only then, will they be entitled to a statutory liability limitation. (*See* Knauer Decl., Ex. A (BCA App. A), § VI); ECL § 27-1421(1). The governing statute, likewise, explicitly limits the availability of a liability limitation and contribution protection to parties that receive a COC. ECL § 27-1421(6).[11] Thus, because they have not received a COC, the BCA Plaintiffs have not resolved their liability to the state and therefore have a valid Section 107 claim, rather than a Section 113 claim.[12]

---

[11] As Con Edison emphasizes to the detriment of its statute of limitations defense (*see* Point II.B., *infra*), a DEC regulation governing all of its remedial programs provides: "To the extent authorized under 42 USC section 9601, et seq. . . . the remedial party shall be deemed to have entered into an administrative settlement of liability and to have resolved its liability to the State for purposes of contribution protection provided by 42 USC section 9613(f)(2) for 'matters addressed' pursuant to and in accordance with such order, agreement or State assistance contract." (Def. Br. 9-10 (*citing* 6 NYCRR § 375-1.5(b)(5)(iii)).) The regulation begs the question as to whether a release under a non-binding BCA is "authorized" under CERCLA as an administrative settlement for purposes of Section 113(f)(3)(B), a question that DEC does not have authority to answer. To the extent the regulation can be construed to mean that a BCP settlement, if any, is effective before a COC is issued, it would conflict with the statute—which conditions receipt of a limitation of liability and contribution protection upon receipt of a COC—and the statute controls. *Ins. Co. of N. Am. v. Gee*, 702 F.2d 411, 414 (2d Cir. 1983); *Hope v. Cortines*, 872 F. Supp. 14, 21 (E.D.N.Y. 1995), *aff'd*, 69 F.3d 687 (2d Cir. 1995).

[12] The BCA Plaintiffs also have incurred response costs outside of the BCP remediation. Thus, even if costs incurred under the BCP would be recoverable under Section 113, prior costs would be recoverable

Because Con Edison does not assert that the BCA Plaintiffs' Section 107 claim is time-barred, if the Court concludes that Plaintiffs' claim is properly brought under this section, then Con Edison's motion to dismiss Plaintiffs' CERCLA claims should be denied in its entirety. However, the Court need not decide whether the BCA constitutes a resolution of liability: as discussed in Point II, Con Edison's motion to dismiss fails in any event because the BCA Plaintiffs' CERCLA § 113 claim would be timely.

**POINT II**

**TO THE EXTENT THE BCA PLAINTIFFS HAVE A CLAIM
UNDER CERCLA § 113(f)(3)(B), SUCH CLAIM IS TIMELY**

Con Edison advances a startling statute of limitations defense without one shred of support: that the three-year statute of limitations applicable to Section 113 contribution actions began to run when the state appellate court directed DEC to accept the Site into the BCP. (Def. Br. 18.) Even assuming, *arguendo*, that the BCA Plaintiffs have resolved their CERCLA liability with the state and must proceed under Section 113, the very earliest date on which the limitations period for that claim could conceivably have commenced would be the BCA's effective date. Because Con Edison's statute of limitations argument fails, the Court need not decide the fact sensitive issue of whether Section 107 or Section 113 applies to the BCA Plaintiffs in order to deny Con Edison's motion.

A.  The State Court Decision Did Not Trigger the Section 113 Limitations Period

In asserting that Plaintiffs' claim under Section 113(f)(3)(B) is time-barred, Con Edison

---

under Section 107. While the court in *Niagara Mohawk*, 596 F.3d at 127-28, held that the *same* costs could not be pursued under both CERCLA §§ 107 and 113(f)(3)(B), that case did not address the availability of separate claims under Sections 113 and 107 for separate expenses, an approach that has been recognized by numerous courts. *See, e.g.*, *U.S. v. Pharmacia Corp.*, 713 F. Supp. 2d 785, 791 (2010); *AmeriPride Servs., Inc. v. Val. Indus. Serv., Inc.*, No. CIV. S-00-113 (LKK/JFM), 2011 WL 1833179 *17-18 (E.D. Cal, May 12, 2011); *LWD PRP Grp. v. ACF Indus., LLC*, No. 5:12-CV-00127 (JHM), 2014 WL 901648 *3 (W.D. Ky. Feb. 7, 2014); *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 812-13 (1994).

purports to rely on CERCLA § 113(g)(3). (Def. Br. 12.) However, that section identifies only three specific triggers for the three-year limitations period for contribution actions:

> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

CERCLA § 113(g)(3); 42 U.S.C. § 9613(g)(3). The state court order from which Con Edison would have the limitations period commence does not qualify as any of the triggers that Congress selected. It is not a "judgment . . . for recovery" of CERCLA response "costs or damages" or a "judicially approved settlement" relating to CERCLA "costs or damages"; there was no claim in the state court action relating to response costs, and there was no CERCLA settlement approved by the court. CERCLA expressly grants exclusive jurisdiction to federal courts to resolve CERCLA actions and, accordingly, it was not within the state court's power to issue an order triggering the limitations period. 42 U.S.C. § 9613(b). Nor was the court order an "administrative order" with the federal government under Sections 122(g) or 122(h).[13]

None of the Supreme Court or Court of Appeals cases cited by Con Edison holds that anything other than a triggering event enumerated in the statute can commence the limitations period for a contribution claim. (Def. Br. 13.) The decisions in *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007), and *Niagara Mohawk*, 596 F.3d at 128 n. 19, merely recite that claims under CERCLA Section 113 are subject to a three-year statute of limitations, without discussing triggering events. *Cooper Industries, Inc. v. Aviall Services, Inc.,* 543 U.S. 157, 167 (2004), does

---

[13] *See* 42 U.S.C. § 9622(g), "De minimis settlements" ("[T]he President shall as promptly as possible reach a final settlement with a potentially responsible party in an administrative or civil action under section 9606 or 9607 of this title."); 42 U.S.C. § 9622(h), "Cost recovery settlement authority" ("The head of any department or agency with authority to undertake a response action under this chapter . . . may consider, compromise, and settle a claim under section 9607 of this title for costs incurred by the United States Government . . . .").

not establish any alternative triggers when one of those listed in Section 113(g)(3) is not present. And in *New York v. Solvent Chem. Co., Inc.*, 664 F.3d 22, 26 (2d Cir. 2011),[14] and *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552, 558 (6th Cir. 2007), the actual settlement agreements were approved by a federal court.[15] In fact, numerous courts considering statute of limitations defenses to Section 113(f)(3)(B) claims—including courts in the Second Circuit—have held that administrative settlements not of the types enumerated in the statute do not trigger the Section 113(g)(3) limitations period.[16]

Implicitly conceding that none of the statutory triggers has occurred, Con Edison falls back on "the federal rule that a cause of action accrues when it is complete" (Def. Br. 13), but that rule applies only in circumstances in which the statute itself does not specify *any* trigger for the limitations period. *See Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997); *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013). No such gap-filling is required here: "When it enacted and amended CERCLA,

---

[14] *See New York v. Solvent Chem. Co., Inc.*, 685 F. Supp. 357, 366 (W.D.N.Y. 2010).

[15] Con Edison cites two district court cases, *Chitayat*, 702 F. Supp. 2d at 82-83 and *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 840 F. Supp. 2d 1013, 1034-35 (S.D. Ohio 2011), in which the district court held that the three-year limitations period ran from the effective dates of administrative consent orders. Neither court explained its rationale for reading a different triggering event into the statute, other than the perceived need to have some limitations period apply where a claim existed. The cases cited by Con Edison certainly do not provide a basis for holding, as it urges, that the limitations period runs from a state court order holding that an agency must admit a party into a voluntary program, an event far less analogous to the express triggers under CERCLA § 113(g)(3) than the consent orders present in *Chitayat* and *Hobart*.

[16] *See W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, No. 98-CV-8385(F), 2000 WL 1843282, *5 (W.D.N.Y. Nov. 2, 2000) (holding that, even if Section 113(g)(3) provided the statute of limitations for costs incurred pursuant to a DEC consent order, plaintiffs' claim was timely, as no statutory triggering event had occurred); *Durham Mfg. Co. v Merriam Mfg. Co.*, 294 F. Supp. 2d 251, 275-76 (D. Conn 2003) (finding claim timely and "declin[ing] to read into the plain language of § 113(g)(3) an alternative statute of limitations . . . where none of the triggering events of § 113(g)(3) has occurred"); *U.S. v. Scott's Liquid Gold, Inc.*, 934 F. Supp. 362, 365 (D. Colo. 1996) (holding that a cooperative agreement to fund response costs did "not qualify as one of the enumerated events and, therefore, the . . . action [was] not time-barred"); *Gould Inc. v. A&M Battery and Tire Serv.*, 901 F. Supp. 906, 914 (M.D. Pa. 1995), *vacated on other grounds*, 232 F.3d 162 172 (3d Cir. 2000) (concluding that party that entered into a consent order with EPA was "correct in its assertion that none of the four triggering events [had] occurred and thus, [its] claim [was] not time barred by § 113(g)(3)").

Congress specifically included a statute of limitations. . . . The [state court order] does not meet the statutory criteria of Section 113(g)(3), and the claim is not time-barred." *Reichhold Chems., Inc. v. Textron, Inc.*, 888 F. Supp. 1116, 1125 (N. D. Fla. 1995).

B.    Any Section 113(f)(3)(B) Claim Arose No Earlier Than the BCA's Effective Date

Under Con Edison's own argument, even if the Court determined that the BCA Plaintiffs have a Section 113 claim, the three-year limitations period would commence when the claim arises.  (Def. Br. 13-14.)  The earliest possible time at which the BCA Plaintiffs could have resolved their liability to the state, giving rise to a Section 113 claim, was the effective date of the BCA, December 31, 2010, which was less than three years prior to the execution of the tolling agreement between Con Edison and Plaintiffs.  The BCA Plaintiffs had no ability to take any steps under the BCP, or to qualify even on a prospective basis for any statutory release from liability, until the BCA became effective.  Accordingly, if the Court were to determine that the BCA Plaintiffs have a claim under Section 113(f)(3)(B), that claim is timely.

Ignoring that reality, Con Edison argues for dismissal on statute of limitations grounds based entirely on the BCP Act's provision that an "applicant" (defined as "a party whose request to participate in the BCP has been accepted by [DEC]") "shall not be liable" to the state on any statutory or common law ground.  (Def. Br. 9 (quoting ECL §§ 27-1405(1), 27-1421(1)).)  Yet Con Edison disregards the express language of the statute, which confirms that the liability limitation applies only "*after* the [DEC] has issued a certificate of completion for a brownfield site."  ECL § 27-1421(1).  Con Edison urges an illogical reading of these provisions to suggest that, at the moment the state court directed DEC to accept certain of the Plaintiffs into the BCP—even before DEC complied with the order and executed the BCA—those Plaintiffs received, "by operation of law," an automatic, nondiscretionary release from CERCLA liability, and thus

resolved their liability to the State.  (Def. Br. 18.)  Con Edison's position would make all parties notified of their eligibility to enter the BCP legally entitled to a nondiscretionary release from CERCLA liability, regardless of whether they ultimately enter into a BCA and receive a COC— a reading that is directly contradicted by the statute, regulations, agency guidance, case law, and logic.  At the point of the state court decision, the BCA Plaintiffs may have elected not to participate in the Program; indeed, EMSC (now PLH) did just that.  Con Edison's position would illogically mean that, despite having opted out of the BCP, PLH has settled with DEC and is entitled to the liability limitation and contribution protection.[17]

Con Edison's argument conflates eligibility with entitlement.  While it is true that a party must be an "applicant" to be *eligible* for a release of liability under the BCP, a party's status as an "applicant" does not *entitle* the party to such a release.  Rather, under the BCP, an eligible applicant cannot receive any release from liability until a BCA has been entered into, remediation has been completed, a final engineering report  has been approved by DEC, and a COC has been issued.  6 NYCRR § 375-1.9.  New York courts have confirmed that applicants are not entitled to any liability limitation until they enter into a BCA and perform their obligations under DEC oversight.  In *E. Riv. Realty Co.*, the court held:

> to participate in the BCP, an applicant must apply to the DEC, which determines whether the site and proposed remediation qualifies under the standards for participation . . . .  T   he owner of a qualified site must thereafter enter into a [BCA] and become subject to DEC oversight to assure compliance. The benefits *for successful participants* include limitations on certain future environmental liabilities and tax credits for certain remediation and development costs.

22 Misc. 3d at 406 (emphasis added).  Similarly, in a prior opinion, the same court held that:

---

[17] DEC guidance underscores that an applicant's acceptance into the program provides no legal entitlement to a release from liability.  When DEC notifies an applicant that its request to participate has been accepted, the applicant must submit a signed copy of a BCA within 60 days, or that acceptance is deemed rescinded.  (Knauer Decl., Ex. B (DER-32), at 8.)

> [a]ccepted applicants are required to enter into a [BCA], acceptable to the DEC, which, among other things, requires that an owner remediate the property according to a plan that must include engaging community participation and comment . . . . T he DEC is required to oversee and determine compliance while remediation is taking place and has the ultimate authority to certify *whether the remediation is eligible* for the attendant benefits.

*377 Greenwich LLC v. N.Y. State Dep't of Envtl. Conservation*, 14 Misc. 3d 417, 420 (Sup. Ct. N.Y. Cnty. 2006) (emphasis added) (citations omitted).

Con Edison's alternative argument that the BCA Plaintiffs should be considered to have resolved their liability as of the date on which they signed the BCA (Def. Br. 15 n.14) is similarly unavailing, as the Agreement had not yet been signed by DEC, and, therefore, by its terms, had no legal force or effect.[18] (*See* Kavaler Aff., Ex. C (BCA), at V.C. ("The effective date of this Agreement is the date it is signed by the Commissioner . . . ."); *see also* Knauer Decl., Ex. B (DER-32), at 8.) Finally, Con Edison's argument that, because the BCA Plaintiffs purportedly had sought to be admitted into the BCP "*nunc pro tunc*" as of an earlier date, to be eligible for the tax credits available at the time their application was wrongly denied, they must be considered to have resolved their liability prior to entering into the BCA, is both factually incorrect and irrelevant. (Def. Br. 16-17.) This relief was not, in fact, requested, and the court did not hold that Plaintiffs were "deemed admitted" into the BCP at all, much less "*nunc pro tunc*." Instead, the court merely held that DEC was required to accept the BCA Plaintiffs into the BCP and that they would be subject to the provisions of the BCP Act that were in effect in

---

[18] Con Edison's selective quotation of the court's holding in *E. Riv. Realty Co.* as characterizing DEC's execution of a BCA as "ministerial" is misleading and inapposite. (Def. Br. 18, quoting *E. Riv. Realty Co.*, 22 Misc. 3d at 424.) In that case, DEC had already issued BCAs for the sites at issue, and then later determined that the sites were in fact ineligible for the BCP. The court overturned that determination and, given that the BCAs had already been prepared by DEC and signed by the applicant, concluded that DEC's execution of those existing BCAs was a "ministerial" act in the sense that no remand for further discretion by DEC as to whether to admit the subject sites into the BCP was warranted. The purpose of this holding was to deny DEC a "'do over' to create new reasons to deny eligibility." *Id.* n.11. The *E. Riv. Realty Co.* court was not charged with determining the legal effect of the BCAs on CERCLA liability.

2007 once they were admitted into the program. *HLP Props.*, 21 Misc. 3d at 671.

Ironically, in arguing that the BCA Plaintiffs must proceed under Section 113, Con Edison relies heavily on 6 NYCRR § 375-1.5(b)(5)(iii), providing that, "to the extent authorized by" CERCLA, DEC remedial orders and agreements shall be considered administrative settlements under Section 113 entitling the remedial party to protection from contribution actions brought by others. (Def. Br. 9-10.) But this provision applies only "when a remedial party is *implementing a remedial program* under an order, agreement, or State assistance contract with the Department," 6 NYCRR § 375-1.5(b) (emphasis added), which could not possibly have occurred at the time of the state court decision, and therefore only demonstrates the absurdity of Con Edison's position that the state court order effectuated a Section 113(f)(3)(B) settlement. At the time of the state court order, the BCA had not been signed and there was no remedial program being implemented by Plaintiffs.

Whenever federal courts in the Second Circuit have held that a settlement with a state agency gave rise to a claim under CERCLA § 113(f)(3)(B), it has been on the basis of a binding, signed agreement between the remediating party and the agency. *See Niagara Mohawk*, 596 F.3d at 127; *Chitayat*, 702 F. Supp. 2d at 81; *Seneca Meadows*, 427 F. Supp. 2d at 287 (W.D.N.Y. 2006). No federal court has ever held that a state court judgment on an issue unrelated to CERCLA liability can somehow trigger a CERCLA statute of limitations.

As this Court has instructed, "[d]efendants carry the burden of showing that [a] [p]laintiff failed to plead timely claims. Dismissing claims on statute of limitations grounds at the complaint stage 'is appropriate only if a complaint clearly shows the claim is out of time.'" *Marcinski v. RBS Citizens Bank, N.A.*, No. 13-CV-06022 (LGS), 2014 WL 1757411, *3 (S.D.N.Y. May 2, 2014) (citation omitted)). Con Edison fails to meet that heavy burden. The

Court should decline Con Edison's invitation to ignore the plain language of CERCLA and the BCP, drastically extend the case law concerning when the limitations period for a CERCLA Section 113 claim accrues, and erect barriers in the path of plaintiffs that voluntarily remediate properties to recover their costs.[19]

## POINT III

## PLAINTIFFS' STATE COMMON LAW CLAIMS SHOULD NOT BE DISMISSED

### A. Plaintiffs' State Common Law Claims Are Not Preempted by CERCLA

CERCLA does not expressly preempt state law or establish a comprehensive scheme that displaces state common law claims. Instead, CERCLA may preempt state law only "when 'compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Niagara Mohawk*, 596 F.3d at 138. Con Edison asserts that it is a policy objective of CERCLA to bar litigants from using state law to recover remediation costs that cannot be recovered under CERCLA. (*See* Def. Br. 20-21.) That argument is directly contradicted by the express terms of the statute: "Nothing in this chapter shall be construed or interpreted as *preempting* any State from imposing any *additional liability* or requirements with respect to the release of hazardous substances within such State." 42 U.S.C. § 9614(a)-(b) (emphases added).

The Second Circuit has ruled accordingly. *Bedford*, 156 F.3d at 426 (CERCLA "does not expressly preempt state law, but simply prohibits states from 'recovering compensation for the

---

[19] In addition to stating claims for past response costs, Plaintiffs have also alleged that they will incur response costs in the future for which Con Edison is and will be liable. (*See, e.g.,* Compl. ¶ 81.) They are therefore entitled to a declaratory judgment confirming Con Edison's continued liability under both CERCLA and common law and requiring Con Edison to pay such costs. (*Id.* ¶¶ 87-91, 113-118.) As reflected in the cases cited by Con Edison (Def. Br. 24), declaratory relief is plainly available under CERCLA and the Declaratory Judgment Act to eligible parties such as Plaintiffs. *See* CERCLA § 113(g)(2), 42 U.S.C. §9613(g)(2); 28 U.S.C. § 2201(a); *Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 92 (2d Cir. 2000); *In re Joint E. & S. Dist. Asbestos Litig.,* 14 F.3d 726, 731 (2d Cir. 1993).

same removal costs or damages or claims' under both CERCLA and state or other federal laws'") (citation omitted). Indeed, in *Niagara Mohawk*, the Second Circuit confirmed that a Section 113(f)(3)(B) claim only preempts state common law claims if and to the extent those claims seek duplicative, CERCLA-recoverable costs. 596 F.3d at 138-39.[20] Consequently, district courts in the Second Circuit have consistently affirmed that claims under either Section 107 or Section 113 only preempt duplicative state law claims.[21] Here, Plaintiffs' state law claims only seek non-CERCLA recoverable costs (Compl. ¶¶ 100, 111, 118) and therefore are not preempted.

## B. Plaintiffs' Indemnification Claim Is Not Barred by Unsupported Allegations of "Fault"

Con Edison argues that Plaintiffs' claim for common law indemnification is barred because Plaintiffs are "partially at fault" through having "maintain[ed] a nuisance on [their] property." (Def. Br. 21-22.) As an initial matter, such statements should not be considered by the Court on a motion to dismiss. *Cromwell v. New York City Health & Hosps. Corp.*, 12-CV-4251, 2013 WL 5637752, *3 (S.D.N.Y. Oct. 16, 2013) ("In considering a Rule 12(b)(6) motion, the Court 'must

---

[20] The court explicitly noted that the plaintiff sought only CERCLA-recoverable costs via its state law claims, and found the plaintiff's state common law claims were therefore preempted, because "§ 113 was intended to provide the only contribution avenue for parties with *response costs incurred under CERCLA. . . .*" *Niagara Mohawk*, 596 F.3d at 138 (emphasis added).

[21] The two district court cases that Con Edison cites in support of its argument that a plaintiff's Section 107 claims preempts all state common claims only found preemption of state common law claims for the same response costs sought under Section 107. (Def. Br. 20.) *See DVL, Inc. v. Gen. Elec. Co.*, 811 F. Supp. 2d 579, 597 (N.D.N.Y. 2010), *aff'd sub nom. DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378 (2d Cir. 2012); *Major v. Astrazeneca, Inc.*, 5:01CV618 (FJS/GJD), 2006 WL 2640622 (N.D.N.Y. Sept. 13, 2006). The same is true for the New York district court case Con Edison cites with respect to Section 113 preemption. (Def. Br. 20, (citing *Chitayat*, 702 F. Supp. 2d at 83).) Not cited by Con Edison are several district court decisions in the Second Circuit that have followed *Niagara Mohawk* and *Bedford* to hold that causes of action under either Section 107 or Section 113 can only preempt duplicative state law claims. *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 402, 404 (N.D.N.Y. 2013); *New York v. Ametek, Inc.*, 473 F. Supp. 2d 432, 434 (S.D.N.Y. 2007); *New York v. Next Millennium Realty, LLC*, CV03-5985(SJF)(MLO), 2007 WL 2362144, *8-11 (E.D.N.Y. Aug. 14, 2007); *New York v. Hickey's Carting*, 380 F. Supp.2d 108, 114-15 (E.D.N.Y.2005). *Solvent Chem. Co. ICC Indus., Inc. v. E.I. Dupont De Nemours & Co.*, 242 F. Supp. 2d 196, 211 (W.D.N.Y. 2002); *Volunteers of Am. of W. New York v. Heinrich*, 90 F. Supp. 2d 252, 258 (W.D.N.Y. 2000); *see also Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 127 (3d Cir. 1991).

confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'") (citations omitted). *See also Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 202 (2d Cir. 2013) (same). Moreover, Con Edison offers only a single conclusory sentence asserting that a nuisance has been maintained by Plaintiffs, and cites to paragraphs in the Complaint that in no way support this spurious claim. (Def. Br. 21-22.) In fact, the BCA Plaintiffs have been recognized by DEC as "Volunteers," a classification limited to parties without fault for a site's contamination who are "exercis[ing] appropriate care . . . by taking reasonable steps" to prevent exposure to the contamination. (Compl. ¶ 46); ECL § 27-1405(b). In any event, issues of nuisance ordinarily turn on questions of fact. *Futerfas v. Shultis*, 209 A.D.2d 761, 763 (3d Dep't 1994) (quoting *Murray v. Young*, 97 A.D.2d 958, 958 (4th Dep't 1983)).

Even if Con Edison could ultimately demonstrate some "fault" at a later stage of the case, that would not defeat Plaintiffs' indemnification claim. New York law provides that "[i]mplied indemnity . . . 'is not . . . limited to those who are personally free from fault.'" *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 690 (1990) (quoting Prosser and Keeton, Torts § 51, at 342 [5th ed.]). Thus, a property owner may recover cleanup costs from the actual polluter via indemnification, regardless of the owner's putative duty to maintain the site after the pollution occurred. *55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 885 F. Supp. 410, 425 (E.D.N.Y. 1994) (citing *Mas*, 75 N.Y.2d at 690-691). Here, nothing in the Complaint suggests that Plaintiffs are anything other than the victims of Con Edison's contamination.

C. The Need to Remediate the Site Supports Plaintiffs' Restitution Claim

Contrary to Con Edison's conclusory contention (Def. Br. 22), the Complaint demonstrates

that Plaintiffs' remediation work constitutes a "servic[e] . . . immediately necessary to satisfy the requirements of public decency, health, or safety." *City of New York v. Lead Indus. Ass'n, Inc.* ("*Lead Indus. Ass'n*"), 222 A.D.2d 119, 125-26 (1st Dep't 1996); (Compl. ¶¶ 36-40, 54-57). Neither of the cases cited by Con Edison holds that the remediation of a hazardous waste site fails to meet the standard of immediate necessity. (Def. Br. 22 (citing *Lead Indus. Ass'n* at 125-26; *Chase Manhattan Bank, N.A. v. T & N plc*, No. 87-CV-4436 (JGK), 1996 WL 603934, *9-10 (S.D.N.Y. Oct. 22, 1996), *aff'd*, 162 F.3d 1147 (2d Cir. 1998)).) Indeed, analogous precedent holds that the remediation of a contaminated site does provide the basis for a restitution claim. *See Hickey's Carting*, 380 F. Supp. 2d at 121; *55 Motor Ave. Co.*, 885 F. Supp. at 424.[22]

D.  Plaintiffs May Seek a Declaratory Judgment as to Future Costs under State Law

Con Edison also seeks the dismissal of Plaintiffs' claim for declaratory judgment for future indemnification and restitution, citing a single case in which a declaratory judgment claim was not pled. (Def. Br. 22 (citing *Alloy Briquetting Corp. v. Niagara Vest, Inc.*, 756 F. Supp. 713, 722 (W.D.N.Y. 1991)).) Here, the Complaint pleads a separate and distinct claim for a declaratory judgment as to future costs. (Compl. ¶ 118.) A declaratory judgment is available to stabilize prospective legal rights, regardless of whether the underlying legal theory itself directly allows for recovery of future costs. 28 U.S.C. § 2201(a); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,* 673 F.3d 84, 105-06 (2d Cir. 2012).[23]

---

[22] To the extent there is any dispute over whether remedial action was "immediately" necessary, such is a question of fact that cannot be resolved on a motion to dismiss. *See Chase Manhattan Bank, N.A. v. T & N plc*, 905 F. Supp. 107, 123 (S.D.N.Y. 1995); *Nat'l R.R. Passenger Corp. v. New York City Hous. Auth.*, 819 F. Supp. 1271, 1280 (S.D.N.Y. 1993).

[23] New York courts have confirmed the availability of a declaratory judgment concerning future indemnification rights related to the cleanup of hazardous waste. *Sweet v. Texaco, Inc.*, 67 A.D.3d 1322, 1324 (4th Dep't 2009); *145 Kisco Ave. Corp. v. Dufner Enterprises, Inc.*, 198 A.D.2d 482, 482-83 (2d Dep't 1993). This Court has also recognized the availability of a declaratory judgment to stabilize future indemnification rights. *Rosen v. Mega Bloks Inc.*, 06-CV-3474 (LTS/GWG), 2009 WL 929474, *3-4

**THE CLAIMS OF PLAINTIFFS WEST 58TH AND PLH SHOULD NOT BE DISMISSED**

The Non-BCA Plaintiffs are not participating in the BCP, but have incurred costs in responding to Con Edison's pollution.  Con Edison does not argue that these Plaintiffs must proceed under Section 113.  Instead, Con Edison argues for the dismissal of the Non-BCA Plaintiffs' CERCLA claims on the ground that the Complaint does not distinguish between costs incurred by those Plaintiffs and the BCA Plaintiffs.  (Def. Br. 22-23.)  However, the Complaint sufficiently alleges that all Plaintiffs incurred response costs in investigating and/or remediating the Site (*see, e.g.,* Compl. ¶¶ 13, 63-67), satisfying Plaintiffs' requirement to provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8. Plaintiffs are not required to provide "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.*, 550 U.S. at 570.

Con Edison has long had notice of all Plaintiffs' claims.  The Non-BCA Plaintiffs owned the site through 2004.  (Compl. ¶¶ 11–12.)  Given the history of "more than ten years of . . . settlement discussions" between Con Edison and Plaintiffs, Con Edison cannot plausibly assert that it has not been notified of the Non-BCA Plaintiffs' stake in the instant litigation.  (Dkt. 31 at 5); *see also HLP Props.*, 21 Misc. 3d at 664.  Indeed, all Plaintiffs entered into a tolling agreement with Con Edison.  (*See* Def. Br. n. 10.)  Thus, Con Edison's protestations of inadequate notice not only fail as a matter of law, but are also disingenuous.  (*See id.* 24.)

Moreover, contrary to Con Edison's curious assertion that the CERCLA § 107 claims of PLH and West 58th St. are time-barred (Def. Br. 24), site ownership is irrelevant to the applicable statute of limitations.  CERCLA provides that Section 107 actions must be commenced within

(S.D.N.Y. Apr. 7, 2009), *report and recommendation adopted,* 2009 WL 1392538 (S.D.N.Y. May 19, 2009).

three years after completion of a removal action, or within six years after initiation of physical on-site construction of the remedial action. 42 U.S.C. § 9613(g)(2). Reference to ownership of a remedial site is entirely absent from the statute of limitations, and from the cases cited by Con Edison for this spurious proposition. (*See* Def. Br. 24 (citing *Schaefer v. Town of Victor*, 457 F.3d 188 (2d Cir. 2006); *Syms v. Olin Corp.*, 408 F.3d 95 (2d Cir. 2005)).) Plaintiffs' remediation of the Site began in 2012, and accordingly, there is no basis to dismiss the claims of West 58th Street or PLH.

## CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety.

Respectfully submitted,

Dated : June 2, 2014

SIVE, PAGET & RIESEL, P.C.

By: /s/ Elizabeth Knauer
    Elizabeth Knauer (EK 5865)
    Jeffrey B. Gracer (JG 9079)
    460 Park Avenue
    New York, New York 10022
    Telephone: (212) 421-2150
    eknauer@sprlaw.com
    jgracer@sprlaw.com

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Randy M. Mastro
    Randy M. Mastro (RM 9492)
    Jennifer H. Rearden (JR 2552)
    200 Park Avenue
    New York, New York 10166-0193
    Telephone: (212) 351-4000
    rmastro@gibsondunn.com
    jrearden@gibsondunn.com

*Attorneys for Plaintiffs*