UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/16/2014
```

------------------------------------------------------------X
                                       :

HLP PROPERTIES, LLC, et al.,          :
                                         :

                    Plaintiffs,   :      14 Civ. 01383 (LGS)
                                         :

            -against-         :      OPINION AND ORDER
                                         :

CONSOLIDATED EDITSON COMPANY OF :
NEW YORK, INC.,                :
                                         :

                    Defendant.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Defendant Consolidated Edison Company of New York, Inc. ("CECONY") moves to disqualify Gibson, Dunn & Crutcher LLP ("Gibson Dunn") as counsel for Plaintiffs. For the following reasons, the motion is denied.

## I.    BACKGROUND

      The facts are taken from the allegations in the Complaint and affidavits and exhibits submitted with the parties' briefing. These facts are assumed to be true for purposes of the present motion only.

### A.    Gibson Dunn's Representation of Plaintiffs

      This is an action under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA") and New York common law. Plaintiffs are the owners, past owners and developers of a parcel of land located in West Chelsea (the "Site"). Defendant CECONY is a previous owner of the Site. On March 3, 2014, Plaintiffs brought suit against CECONY, alleging that CECONY polluted the Site and seeking reimbursement for remediation costs.

Plaintiffs' litigation counsel is Gibson Dunn, by Randy Mastro, a litigation partner in the firm's New York office.  Plaintiffs are also represented by Sive, Paget & Riesel, P.C., which primarily advises on environmental and technical aspects of the case.  Gibson Dunn has represented Plaintiffs in connection with the Site since 1999.

From the time Gibson Dunn was initially retained until now, it has been in contact with CECONY representatives.  In connection with the early stages of negotiations between Plaintiffs and CECONY, Gibson Dunn met with or corresponded with CECONY representatives on at least four occasions, including in June 1999, May 2000, June 2000 and July 2000.  Gibson Dunn continued to have contact with CECONY representatives in later stages of the negotiations, including in 2011, when Gibson Dunn spoke directly with an executive of CECONY in connection with the negotiations; in December 2013, when Plaintiffs and CECONY entered into a six-month tolling agreement; and in January 2014, just before the Complaint in this action was filed, when Mastro sent CECONY a letter terminating the tolling agreement.

**B.      Gibson Dunn's Representation of CEI**

In 2003, CECONY's parent company, Consolidated Edison, Inc. ("CEI"), retained Gibson Dunn by John Olson, a corporate partner in the firm's Washington, D.C. office.  The engagement letter executed by Gibson Dunn and CEI identified CEI as the client, and stipulated that "[u]nless expressly agreed, [Gibson Dunn] [is] not undertaking the representation of any related or affiliated person or entity, nor any family member, parent corporation or entity, *subsidiary*, or affiliated corporation or entity, nor any of [CEI's] or their officers, directors, agents, partners or employees."  (emphasis added).  Gibson Dunn did not seek a conflicts waiver from CEI at the time.

Olson submitted a sworn affidavit in opposition to the disqualification motion, describing the scope of Gibson Dunn's engagement as "limited to advising the CEI board and one committee of CEI – the Corporate Governance and Nominating Committee . . . – solely with respect to corporate governance matters relating to public companies and NYSE-listed companies." Olson states that he did not attend any CECONY board meetings or perform any work for CECONY. Notwithstanding this statement, he notes that in two instances, work he performed for CEI may have benefitted CECONY. The first instance was in 2012, when Olson reviewed and commented on portions of CEI's proxy statements; according to Olson, some of his commentary may have been applicable to CECONY's annual information statement. The second instance was in 2009, when Olson provided advice to CEI regarding a third-party audit relating to governance issues at CEI and CECONY.

In his affidavit, Olson describes one additional matter in which Gibson Dunn represented CEI, which occurred in early 2013 and lasted several weeks. The matter involved a state court action filed by shareholders against CEI and arose out of disclosures in a CEI proxy statement that were made on the advice of Olson and his corporate team. CECONY was not involved in the lawsuit. Olson affirms that he has never provided advice directly to CECONY or its Board, or represented CECONY in any way.

### C.      Gibson Dunn's Representation of Other Parties Adverse to CECONY

Between 2002 and 2008, Mastro represented three clients, in addition to Plaintiffs, that were adverse to CECONY and/or CEI. For two of the representations, involving Crow Holdings and Verizon New York Inc., respectively, which commenced after Gibson Dunn's concurrent representation of CEI, Gibson Dunn sought and obtained waivers to allow it to sue CEI. Mastro states that he sought a written waiver for the Crow Holdings matter because it was potentially

adverse to both CEI and CECONY.  Likewise, Mastro affirms that he sought a waiver in the

Verizon matter because it arose out of the same facts as the Crow Holdings with the same

potential to be adverse to CEI.

### D.      Relationship Between CECONY and CEI

There is significant overlap, both financial and operational, between CECONY and CEI.

The corporate secretary of CEI and CECONY, Carole Sobin, submitted a sworn affidavit in

support of CECONY's motion to disqualify Gibson Dunn, representing that CEI and CECONY

share corporate headquarters, a computer system, a payroll system, a human resources

department and benefit plans.  Sobin further states that CEI and CECONY share management,

including their legal department and officers.  Sobin affirms that CECONY is CEI's principal

subsidiary and represents 84% of its operating revenues, 96% of its net income and 89% of its

assets.

### E.      CECONY's Motion to Disqualify

On July 31, 2014, a CECONY in-house attorney approached Sobin about collecting

certain documents responsive to a document request by Mastro.  Sobin claims that she was

surprised to learn that Plaintiffs were represented by Gibson Dunn and accordingly asked the

CECONY legal department if there was a conflict issue.  Four current and former attorneys with

the CECONY and CEI legal department submitted sworn affidavits in support of CECONY's

motion to disqualify, stating that they were not aware that Gibson Dunn had a conflict of interest

"due to its representation of both CEI and CECONY."

On August 1, 2014, CECONY's outside counsel advised Gibson Dunn that it had just

learned of Gibson Dunn's representation of CEI, and demanded that Gibson Dunn withdraw as a

result of an alleged conflict of interest.  Gibson Dunn attorneys assert that this was the first time a conflict was alleged or even raised as a concern.

On August 4, 2014, Olson called Sobin to ask whether CEI would waive any conflict of interest on Gibson Dunn's part.  After speaking with the legal department, Sobin informed Olson that CEI was not willing to grant a waiver.

On August 27, 2014, CECONY brought this motion to disqualify Gibson Dunn.  In the motion, CECONY argues that Gibson Dunn must be disqualified because it has a conflict of interest arising from its concurrent representation of Plaintiffs, CEI and CECONY.

## II.    STANDARD

Motions to disqualify counsel are "committed to the discretion of the district court." *Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 275 (S.D.N.Y. 2004).  "The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process."  *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks and citation omitted).  Although "decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification."  *Id.* (citations omitted).  The "only truly binding authority on disqualification issues" is the Second Circuit. *Skidmore v. Warburg Dillon Read LLC,* No. 99 Civ. 10525(NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001).

"In deciding whether to disqualify an attorney, a district court must balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession."  *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir.

2010) (internal quotation marks and citation omitted).  Courts in this Circuit show "considerable reluctance to disqualify attorneys" because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice" and "disqualification motions are often interposed for tactical reasons [a]nd even when made in the best of faith . . . inevitably cause delay." *Bd. of Ed. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citation omitted). Accordingly, "unless an attorney's conduct tends to 'taint the underlying trial,' . . . courts should be hesitant to disqualify an attorney." *Id.*  As the Second Circuit has explained, "disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764-65 (2d Cir. 1990) (citation and alterations omitted).

In the Second Circuit, it is "prima facie improper" for an attorney to represent an existing client in a matter adverse to another existing client. *Hempstead Video*, 409 F.3d at 133 (citing *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)).  In many cases, such a conflict can be cured by written consent from all affected parties.  *See, e.g.*, 22 N.Y.C.R.R. § 1200.0, Rule 1.7(b) ("Notwithstanding the existence of a concurrent conflict of interest . . . a lawyer may represent a client if . . . each affected client gives informed consent, confirmed in writing"); *Cohen v. Strouch*, No. 10 Civ. 7828, 2011 WL 1143067, at *5 n.3 (S.D.N.Y. Mar. 24, 2011) ("Even if the conflict of concurrent representation in related matters were waivable, [counsel] could not cure it without the waiver of [both clients]").  Absent consent from all the parties, the burden is on the attorney "to show, at the very least, that there will be no actual or

*apparent* conflict in loyalties or diminution in the vigor of [its] representation." *GSI Commerce Solutions*, 618 F.3d at 209 (emphasis in original).

## III.   DISCUSSION

CECONY argues two theories upon which Gibson Dunn should be disqualified, both premised on Gibson Dunn's alleged concurrent representation of adverse clients.  First, CECONY asserts that Gibson Dunn has served both CECONY and CEI directly as clients.  Because the evidence in the record does not establish that Gibson Dunn provided any legal services directly to CECONY, this argument is rejected.  Second, CECONY asserts that, even if Gibson Dunn provided services only to CEI, CECONY and CEI must be considered the same client for purposes of disqualification.  This contention is correct, and accordingly the burden is on Gibson Dunn to demonstrate that "there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." *Id.*  Because Gibson Dunn has met its burden, and because other factors counsel against disqualification, the motion is denied.

CECONY's argument that it was a client of Gibson Dunn is not supported by the evidence.  First, the engagement letter in the CEI matter explicitly states that Gibson Dunn is not undertaking the representation of any of CEI's subsidiaries absent express agreement.  The parties agree that there was no such agreement.  Second, Olson denies having performed work in any capacity for CECONY.  Third, the two instances in which Gibson Dunn allegedly rendered services to CECONY – Gibson Dunn's review of *CEI*'s proxy statements and Gibson Dunn's advice to *CEI* in respect of a third party audit relating to issues at both CEI and CECONY – were not rendered to CECONY or with the express purpose of assisting CECONY, although they may have indirectly benefitted CECONY.  On this record, no attorney-client relationship existed between Gibson Dunn and CECONY.  *See generally Merck Eprova AG v. ProThera, Inc.*, 670 F.

Supp. 2d 201, 210 (S.D.N.Y. 2009) (citing six-factor test for determining existence of attorney-client relationship).

The question remains whether a conflict exists by virtue of the parent-subsidiary relationship between CEI and CECONY.  The Second Circuit addressed the contours of so-called "corporate affiliate conflicts" in *GSI Commerce Solutions, Inc. v. Babycenter LLC*, 618 F.3d 204, 209 (2d Cir. 2010).  In *GSI*, the Second Circuit clarified that "affiliates should not be considered a single entity for conflicts purposes based solely on the fact that one entity is a wholly-owned subsidiary of the other, at least when the subsidiary is not otherwise operationally integrated with the parent company."  *Id.* at 211.  However, the court recognized that "representation adverse to a client's affiliate can, in certain circumstances, conflict with the lawyer's duty of loyalty owed to a client," *id.* at 210, depending on "(i) the degree of operational commonality between affiliated entities, and (ii) the extent to which one depends financially on the other."  *Id.*  The court concluded that the district court did not abuse its discretion in granting a motion to disqualify on grounds that "substantial operational commonality" existed between the defendant in that case, to which the law firm in question was adverse, and the parent company of the defendant, which was a client of the law firm, where (1) the subsidiary relied on the parent for accounting, audit, cash management, employee benefits, finance, human resources, information technology, insurance, payroll, and travel services and systems; (2) the subsidiary and the parent had the same in-house legal department; and (3) there was at least some overlap in management.  *Id.* at 212.

The same operational commonalities exist here – namely, CEI and CECONY share corporate headquarters, a computer system, a payroll system, a human resources department, benefits plans and their law department.  Further, the two companies share management – all of

CEI's six officers are also officers of CECONY.  Finally, there is substantial financial dependence between the two companies – CECONY is CEI's principal subsidiary and represents 84% of its operating revenues, 96% of its net income and 89% of its assets.  Accordingly, CEI and CECONY are the same corporate entity for conflicts purposes.

The inquiry does not end there, however.  The burden shifts to Gibson Dunn to show that "there will be no actual or apparent conflict in loyalties or diminution in the vigor of [its] representation."  *Hempstead Video*, 409 F.3d at 133 (citing *Cinema 5*, 528 F.2d at 1387) (emphasis omitted).  In addition, because "the conclusion in a particular case can be reached only after painstaking analysis of the facts," *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977), it is appropriate to consider any tactical motivations in bringing the motion and the prejudice that Plaintiffs may suffer in the event their chosen counsel is disqualified.  *See Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000); *see also Univ. of Rochester v. G.D. Searle & Co.,* Inc., No. 00-CV-6161, 2000 WL 1922271 (W.D.N.Y. Dec. 11, 2000) (considering, *inter alia*, effect of depriving non-movant of counsel of its choice after concluding that there was no actual or apparent conflict in loyalties).

While Gibson Dunn engaged in troubling conduct in failing to obtain a waiver from CEI and Plaintiffs when it undertook to represent CEI, that conduct does not warrant disqualification.  First, the record provides no indication of an actual or apparent conflict in loyalties or diminished vigor in Gibson Dunn's representation.  Plaintiffs have attested to their confidence in Gibson Dunn's continuing as their litigation counsel and Gibson Dunn has already represented Plaintiffs for fifteen years without complaint from either Plaintiffs or CEI.

Second, the record contains no evidence that there is any risk of trial taint, and Defendant does not suggest otherwise.  Gibson Dunn's dual representations involve unrelated subjects,

different attorneys, different Gibson Dunn departments (transactional versus litigation), different offices, and different legal entities—a parent and a subsidiary.  The responsible Gibson Dunn partners have expressly disavowed any inside knowledge relevant to this litigation gained as a result of the representation of CEI.  Olson attested in a sworn declaration that he attended only portions of CEI board meetings where corporate governance was discussed, that he does not recall being present when litigation matters were discussed, and that he has never heard any discussion of any matter relating to the instant dispute.  He also affirmed that his interactions with CEI executives and legal staff related solely to corporate governance issues and that he has never participated in any discussion relating to any dispute involving CECONY.  Mastro likewise submitted a sworn affidavit stating that the two representations involve different teams of lawyers and that no information has been shared between the teams.  These sworn statements are undisputed and sufficiently demonstrate that Gibson Dunn's representation of CEI has not resulted in Gibson Dunn's obtaining confidential information related to this litigation or otherwise tainting these proceedings.  *See Univ. of Rochester*, 2000 WL 1922271, at *7-8 (law firm satisfied burden to demonstrate that there was no actual or apparent conflict in loyalties or diminution in the vigor of its representation where attorneys submitted sworn declarations asserting that they had obtained no confidential information as a result of their allegedly concurrent representations); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, No. 01 Civ. 1574, 2006 WL 2013471, at *8 (E.D.N.Y. July 18, 2006) (same).

        In addition, the timing of CECONY's motion suggests that tactical considerations may have played a role.  Although the parties hotly contest when Gibson Dunn's conflict "became apparent" to CECONY,[1] the law does not impose a burden on the client to assert that a conflict

---

[1] CECONY essentially argues that, despite the operational integration of parent and subsidiary, including identical Boards and a shared law department, the left hand did not know what the

exists.  Regardless of what any individual at CEI or CECONY may have known and when, it seems clear that until July 31, 2014, the day litigation counsel in this matter discovered the conflict, no one at the company fully appreciated the risks of a conflicted representation, or the potential tactical benefits of ousting Gibson Dunn from the litigation, if that could be accomplished.  The demand that Gibson Dunn withdraw from the representation followed the next day.

The final consideration is whether Plaintiffs will suffer significant prejudice if Gibson Dunn is disqualified.  Were it not for this consideration, the outcome of this motion might well have been different, but the issue of prejudice given the duration of the parties' dispute – 15 years – is critical and weighs heavily against disqualification.  Gibson Dunn has represented Plaintiffs in connection with the Site since 1999.  The case involves complex environmental and regulatory matters.  It is doubtful, to say the least, that new counsel could acquire the knowledge accumulated over the years by Gibson Dunn in the time it will take for this case to run its course. Gibson Dunn's co-counsel credibly states that it is responsible for the environmental aspects of this case, and not for the litigation strategy, and that Gibson Dunn would have to be replaced with new litigation counsel.  Gibson Dunn's clients, the Plaintiffs in this case, have submitted

---

right hand knew – that some of the companies' executives and lawyers knew about Gibson Dunn's advice to the Board, and others knew of Gibson Dunn's adverse role in this matter. However, CECONY stops short of saying that no one at the companies knew about the dual representation.  Indeed it seems likely that at least one or more of the management directors were aware of who was providing advice to the CEI Board on corporate governance matters, and who was adverse on a matter critical to CECONY.  The current record shows that the President of CEI and the Chief Executive Officer of both CEI and CECONY from 2005 to 2013 knew of Gibson's Dunn's, and specifically John Olson's, advisory role to the CEI Board.  He also apparently knew of Gibson Dunn's, and specifically Randy Mastro's, role, acting on behalf of Plaintiffs in the current dispute prior to the filing of this lawsuit.  His brief declaration is not necessarily inconsistent as it does not address specific facts, but generally disclaims knowledge of any conflict and this lawsuit, which was filed after he retired.

sworn testimony asserting that they will be severely prejudiced by loss of counsel for multiple reasons, including that Gibson Dunn has already conducted numerous interviews, collected substantial data, and spearheaded the search, review and production of data – which is hosted on Gibson Dunn's server, at significant cost to Plaintiffs.

In contrast, Defendant identifies very modest prejudice to Defendant in the event that Gibson Dunn is not disqualified – that Gibson Dunn will be unable to advise CEI on document production obligations in this case.  The Gibson Dunn partner who advises the CEI Board on corporate governance matters, clarifies, however, that he has never been asked for advice concerning document production in the context of a litigation.  Defendant suggests no other potential prejudice or injustice that it would suffer as a result of Gibson Dunn's continued representation of Plaintiffs, nor is any prejudice apparent from the record.  *Cf. Universal City Studios*, 98 F. Supp. 2d at 455 (denying motion to disqualify where movant "failed to establish any material risk that it would be prejudiced inappropriately by allowing the  . . . firm to continue in this litigation . . . .").

Denying Plaintiffs their chosen counsel of fifteen years is a harsh remedy.  Absent any identifiable, material prejudice to Defendant and any indication that the integrity of the present legal proceedings will be compromised by Gibson Dunn's continued representation of Plaintiffs, such a remedy is not warranted.  Accordingly, Defendant's motion is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED.  Gibson Dunn is directed to undertake all measures to protect the interests of its clients and to uphold its own ethical obligations.  The Clerk is directed to close the motion at Docket No. 54.

Dated: October 16, 2014
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE