```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
HLP PROPERTIES, LLC, et al.,                                :
                                                            :
                                    Plaintiffs,             :      14 Civ. 01383 (LGS)
                                                            :
            -against-                                       :      OPINION AND ORDER
                                                            :
CONSOLIDATED EDISON COMPANY OF                              :
NEW YORK, INC.,                                             :
                                                            :
                                    Defendant.              :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/21/2014

LORNA G. SCHOFIELD, District Judge:

Plaintiffs HLP Properties, LLC ("HLP"), West 17th Property, LLC, f/k/a/ West 17th Development, LLC ("West 17th Street"), West 58th Street Mini Storage Corp. ("W58MS") and PLH Enterprises, Inc. ("PLH") assert claims against Defendant Consolidated Edison Company of New York, Inc. under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), and under New York law. Defendant moves to dismiss the Complaint. For the reasons that follow, Defendant's motion is granted in part and denied in part.

I.  BACKGROUND

   A.  Facts

Plaintiffs HLP, W58MS and PLH are current and former owners of property located in Manhattan between 17th and 18th Streets and 10th and 11th Avenues (the "Site"). Plaintiff West 17th Street is the prospective developer of the Site. The Site and surrounding plots of land were previously owned by Defendant's predecessors, Manhattan Gas Light Company and the Consolidated Gas Company. The predecessors operated a Manufactured Gas Plant ("MGP") in

the area, and the Site served as the location for the main gas production facilities. The MGP was operated from 1834 until the early 1900s, when it was closed and the land on which it was located was divided into parcels and sold. The Site's subsequent owners were unaffiliated with Plaintiffs and Defendant until 1983, when the predecessor of one of the Plaintiffs purchased the Site for use as a parking lot.

The MGP heavily contaminated the Site, leaving coal tar residue, heavy metals, and various volatile and semi-volatile compounds in the soil and groundwater. Starting in 2002, Defendant began the process for remediation of the Site, acting pursuant to a Voluntary Cleanup Agreement administered by the New York State Department of Environmental Conservation ("DEC"). Defendant conducted various studies over the course of several years to evaluate contamination levels and determine the appropriate remediation methods.

In January 2007, three of the Plaintiffs—HLP, West 17th Street and PLH by its predecessor Edison Mini Storage Corp.—submitted an application to enter the Site into the Brownfield Cleanup Program ("BCP"), a program created by the New York State Legislature in 2003 to "encourage persons to voluntarily remediate brownfield sites for reuse and redevelopment." *Matter of HLP Props. LLC v. New York State Dept. of Envtl. Conservation*, 21 Misc. 3d 658, 864 N.Y.S.2d 285 (N.Y. 2008). At the same time, Defendant submitted its own application to enter the Site into the BCP. *Id.* Parties participating in the BCP receive a Certificate of Completion and release of future liability if they successfully carry out a DEC-approved remediation program. Those who receive a Certificate of Completion by December 31, 2015, are eligible for various tax credits for remediation costs and for redevelopment of a previously contaminated site.

On August 2, 2007, the DEC denied both Plaintiffs' and Defendant's applications. *Matter of HLP*, 21 Misc. 3d at 665. The Plaintiff applicants, but not Defendant, challenged the denial in state court. While the case was pending in 2008, legislation was passed that amended the BCP to reduce the tax credits available for participation in the program. The Plaintiff applicants accordingly requested that the state court enter an order requiring the DEC to admit them into the BCP as it existed prior to the 2008 legislation. On September 12, 2008, the Supreme Court, New York County, found that the DEC's denial of the application of the Plaintiff applicants was arbitrary and capricious and/or an abuse of discretion, and ordered the DEC to accept the Site into the pre-2008 BCP. *Id.* at 671-72. On February 11, 2010, the First Department affirmed the lower court's decision. 70 A.D.3d 469, 898 N.Y.S.2d 449 (1st Dep't 2010).

On December 22, 2010, West 17th Street and HLP (the "BCA Plaintiffs")[1] submitted an amended BCP application to the DEC. The BCA Plaintiffs and the DEC subsequently entered into a Brownfield Site Cleanup Agreement ("BCA"), which became effective December 31, 2010, the date it was signed by the DEC Commissioner's designee.

The BCA, together with its Appendix A, outlines the rights and responsibilities of the BCA Plaintiffs and the DEC in investigating and remediating the Site, and requires the BCA Plaintiffs to pay certain costs to the State of New York. Upon successful completion of the remediation program, the BCA provides that the DEC will issue a Certificate of Completion. Upon receipt of the Certificate of Completion, the BCA Plaintiffs are entitled to a liability limitation resolving their liability "to the state upon any statutory or common law cause of action." ECL § 27-1421. The BCA also gives the BCA Plaintiffs the right to "receive contribution protection and/or to seek contribution" for costs incurred in the remediation, subject

---

[1] W58MS and PLH are collectively referred to as the "non-BCA Plaintiffs."

to the constraints of the regulations implementing the BCP and the Environmental Conservation Law.  One of those regulations states that "the remedial party shall be deemed to have entered into an administrative settlement of liability and to have resolved its liability to the State for purposes of contribution protection provided by [CERCLA] . . . [and] by entering into such administrative settlement of liability, . . . the remedial party is entitled to seek contribution . . . under [CERCLA]."  6 NYCRR § 375-1.5(b)(5).

According to the Complaint, since entering into the BCP, Plaintiffs collectively (and without further delineation) have incurred at least $3.6 million in remediation costs, and they anticipate spending a total of $24 million.  On March 3, 2014, Plaintiffs filed the Complaint in this action, asserting that Defendant, as the successor of the original contaminators of the Site, is responsible for reimbursing Plaintiffs for present and future remediation costs.  Plaintiffs assert claims for costs under CERCLA § 107, or in the alternative, under CERCLA § 113; declaratory relief under CERCLA; indemnification and restitution under New York law; and declaratory relief under New York law.

     **B.**     **Statutory Framework**

CERCLA was enacted to "assur[e] that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions."  *Niagara Mohawk Power Corp. v. Chevron U.S.A. Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) (quoting S. Rep. No. 96–848, at 13 (1980)).  To effectuate this purpose, "CERCLA looks backward in time and imposes wide-ranging liability."  *Marsh v. Rosenbloom*, 499 F.3d 165, 178 (2d Cir. 2007).  Specifically, CERCLA imposes strict liability on all "potentially responsible parties," or "PRPs," which include facility owners and operators, persons who at the time of disposal of any hazardous substance owned or operated a facility, persons who arranged for the disposal or treatment of

4

hazardous waste at the relevant site and persons who transported hazardous waste to the site. *See* 42 U.S.C. § 9607(a)(1)-(4).

CERCLA enables parties to recoup costs for cleanup of contaminated sites in one of two ways. First, under § 107, the United States, a state, or "any other person" that has incurred costs in remediating a contaminated site may bring a cost recovery action against a PRP. *Id.* § 9607(a)(4)(B). Second, under § 113, a party may seek contribution from other PRPs if it either (1) has settled its CERCLA liability with a state or the United States through an administrative or judicially approved settlement, 42 U.S.C. § 9613(f)(3)(B); or (2) has been sued under § 107, *see id.* § 9613(f)(1). *See also Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 160-61 (2004) (holding that a party must have been sued under § 107 or § 106 in order to bring a contribution claim under § 113(f)(1)). Two significant differences between § 113 and § 107 are that § 107 provides for joint and several liability, and has a six-year statute of limitations.[2] In contrast, § 113 provides for equitable distribution of costs, and has a three-year statute of limitations. *See U.S. v. Atl. Research Corp.*, 551 U.S. 128, 139-40 (2007); *Niagara*, 596 F.3d at 121.

The Supreme Court has held that a party "eligible to seek contribution under § 113 . . . cannot simultaneously seek to recover the same expenses under § 107(a)." *Atl. Research*, 551 U.S. at 139; *see also Cooper Indus., Inc.*, 543 U.S. at 163 ("In short, . . . CERCLA provide[s] for a right to cost recovery in certain circumstances, § 107(a), and *separate* rights to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B).") (emphasis added); *Niagara*,

---

[2] The six-year statute of limitations for a § 107 claim applies only in the event of a "remedial action," while a three-year limitations period applies for a "removal action." Remedial actions are "generally long-term or permanent containment or disposal programs," while removal efforts are "typically short-term cleanup arrangements." *See Schaefer v. Town of Victor*, 457 F.3d 188, 195-96 (2d Cir. 2006) (describing differences between a removal action and a remedial action). Defendant and this Opinion assume that the six-year statute of limitations applies to Plaintiffs' § 107 claim.

596 F.3d at 122. Instead, a party that is eligible for contribution costs under § 113 or response costs under § 107(a) must proceed under § 113.

## II. STANDARD

On a motion to dismiss, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (alteration in original) (quoting *Twombly*, 550 U.S. at 555), *cert. denied*, 133 S. Ct. 846 (2013). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks and alteration omitted); *see also* Fed. R. Civ. P. 8(a)(2).

Because the statute of limitations is an affirmative defense, Defendant carries the burden of showing that Plaintiffs failed to plead timely claims.  Dismissing claims on statute of limitations grounds at the complaint stage "is appropriate only if a complaint clearly shows the claim is out of time."  *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *accord S.E.C. v. Gabelli*, 653 F.3d 49, 60 (2d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1216 (2013).

## III. DISCUSSION

### A. CERCLA § 107 Claim

Defendant moves to dismiss Plaintiffs' § 107 claim, arguing that Plaintiffs resolved their CERCLA liability pursuant to § 113 and are therefore limited to a claim for contribution under that provision.  Plaintiffs agree that they cannot recover under both § 113 and § 107.  Instead, they argue, first, that "all of [their] claims are best characterized as Section 107 claims . . . [and] [t]he Complaint pleads a Section 113 contribution claim in the alternative, only to the extent that costs are not recoverable under Section 107."  Second, and in tension with their first argument, Plaintiffs contend that the BCA is not an administrative settlement for purposes of § 113, which therefore is not applicable to their claim.

Because the BCA Plaintiffs and the non-BCA Plaintiffs are differently situated for purposes of CERCLA, their claims must be considered separately.  For the reasons that follow, the § 107 claim is dismissed as to the BCA Plaintiffs, but not as to the non-BCA Plaintiffs.

#### i. *BCA Plaintiffs*

The BCA constitutes an "administrative settlement of liability," as the term has been interpreted by the Second Circuit.  Because the BCA Plaintiffs are parties to the BCA, and have

settled their liability for purposes of CERCLA, they must proceed exclusively under § 113, and their § 107 claim is dismissed.

In *Niagara*, the Second Circuit held that a consent order is an administrative settlement of liability for purposes of § 113 where the plaintiff undertook to remediate a contaminated site in exchange for an express resolution of liability under CERCLA and the DEC's covenant not to sue under "State or Federal statutory or common law." *Niagara*, at 596 F.3d at 126; *see also, e.g.*, *Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 427 F. Supp. 2d 279 (W.D.N.Y. 2006) (consent order between the owner of a landfill site and DEC amounted to an "administrative settlement" under § 113(f)(3)(B)). The Second Circuit contrasted its decision in *Niagara* with two previous decisions in which it had determined that agreements with the DEC did not constitute administrative settlements for purposes of § 113; in both cases, the agreement absolved the plaintiffs solely of *state* liability, without reference to CERCLA, "[leaving] open the possibility that the [DEC] might still seek to hold [the plaintiff] liable under CERCLA . . . ." *Id.* at 125 (addressing *Consol. Edison Co. v. U.G.I. Utils., Inc.*, 423 F.3d 90, 97 (2d Cir. 2005); *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 91 (2d Cir. 2009)).

Like the consent order in *Niagara*, the BCA expressly releases the BCA Plaintiffs from liability under CERCLA. Specifically, the BCA and its Appendix A entitle the BCA Plaintiffs to "receive contribution protection and/or to seek contribution to the extent authorized by ECL § 27-1421(6) and 6 NYCRR § 375-1.5(b)(5)." ECL § 27-1421, in turn, provides that "after the department has issued a certificate of completion for a brownfield site, the applicant shall not be liable to the state upon any statutory or common law cause of action." 6 NYCRR § 375-1.5(b)(5) provides that "the remedial party shall be deemed to have entered into an administrative settlement of liability and to have resolved its liability to the State for purposes of

8

contribution protection provided by [CERCLA] . . . [and] by entering into such administrative settlement of liability, . . . the remedial party is entitled to seek contribution . . . under [CERCLA]."  6 NYCRR § 375-1.5(b)(5).  Because the BCA expressly entitles Plaintiffs to a resolution of liability under CERCLA, it is by its own terms an "administrative settlement" pursuant to § 113.  Accordingly, the BCA Plaintiffs must proceed under § 113, and the claim for relief pursuant to § 107 is dismissed.

In advocating a contrary result, Plaintiffs make three arguments.  First, they contend that *Niagara* is distinguishable because the agreement there was "binding," while the BCA is "voluntary."  Specifically, Plaintiffs assert that the *Niagara* plaintiff was subject to a daily penalty for failure to comply with the applicable consent order, whereas Plaintiffs here may terminate the agreement at any time without consequence.  The *Niagara* court made no such distinction between binding and voluntary agreements, nor is there a principled basis to do so.  The operative question in determining whether an agreement qualifies as an administrative settlement for purposes of § 113 is whether a plaintiff has resolved its CERCLA liability through that settlement – whether or not its resolution of liability is compelled or voluntary is of no relevance.  Accordingly, Plaintiffs' argument fails.

Second, Plaintiffs argue that the BCA is not an administrative settlement of liability because it involves only a future release of liability, contingent upon Plaintiffs' successful remediation pursuant to the BCP.  There is no authority for this proposition.  Indeed, it is contradicted by case law of the Second Circuit and numerous district courts in this Circuit concluding that agreements providing for future resolution of CERCLA liability constitute administrative settlements for purposes of § 113.  *See, e.g.*, *Niagara*, 596 F.3d at 126; *Chitayat v. Vanderbilt Assocs.*, 702 F. Supp. 2d 69, 81 (E.D.N.Y. 2010); *Seneca*, 427 F. Supp. 2d at 286.

Finally, Plaintiffs assert that they incurred expenses outside of the BCP, which are therefore recoverable under § 107.  Because claims under §§ 107 and 113 provide mutually exclusive remedies, and the BCA Plaintiffs are eligible to proceed under § 113, they are not permitted to proceed under § 107, even if certain costs might be recoverable only under that provision.  *E.g.*, *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 767-68 (6th Cir. 2014) (party "which has entered into an administrative settlement with the government, thereby having met a statutory trigger for filing a contribution action, can bring only a § 9613(f)(3)(B) action for contribution—not a § 107(a)(4)(B) cost-recovery action" where "at least some of its liability was resolved" with the government).

    ii. *Non-BCA Plaintiffs*

Based on the facts pleaded in the Complaint and drawing all reasonable inferences in favor of the non-moving parties, the non-BCA Plaintiffs have not settled their CERCLA liability for purposes of § 113 and thus are not precluded from asserting a claim for response costs under § 107.  At this stage in the proceedings, the non-BCA Plaintiffs have sufficiently asserted a claim for response costs under § 107, and Defendant's motion to dismiss is denied.

Defendant argues that even if the non-BCA Plaintiffs are not prevented by § 113 from bringing a claim under § 107, the non-BCA Plaintiffs' § 107 claim fails for independent reasons.  First, Defendant asserts that the non-BCA Plaintiffs have not alleged that they incurred any response costs under § 107.  Similarly, Defendant contends that the non-BCA Plaintiffs lack standing because they have not alleged sufficient injury separate from that of the BCA Plaintiffs.  These arguments are unavailing because the Complaint alleges that all four Plaintiffs, including the non-BCA Plaintiffs, incurred CERCLA costs, which is sufficient for pleading purposes and this motion.

Second, Defendant asserts that the non-BCA Plaintiffs' § 107 claim is time-barred because the claim was brought "more than six years after their ownership of the Site terminated . . . ." A claim for response costs in a remedial action under § 107 must be brought "within 6 years after initiation of physical on-site construction of the remedial action." § 113(g)(2)(B). The Complaint is unclear as to when Plaintiffs, and specifically the non-BCA Plaintiffs, commenced remedial action, and alleges only that excavation activities began in November 2013 and that "remedial activities are ongoing." Because the Complaint does not "clearly show[] [that] the claim is out of time," *Harris*, 186 F.3d at 250, Defendant cannot carry its burden on this motion of establishing that the non-BCA Plaintiffs' § 107 claim is untimely.

**B.    CERCLA § 113 Claim**

Defendant moves to dismiss Plaintiffs' § 113 claim, asserting that it is barred by the applicable three-year statute of limitations. Defendant's motion is denied as to the BCA Plaintiffs, but granted as to the non-BCA Plaintiffs.

i.    *BCA Plaintiffs*

Because the BCA Plaintiffs entered into the BCA on December 31, 2010, and entered into a tolling agreement within the limitations period, their § 113 claim is timely.

The statute of limitations for a § 113 claim is three years. 42 U.S.C. § 9613(g)(3). *See also Niagara*, 596 F.3d at 128 n.19 ("[C]laims under § 113 have a three-year statute of limitations."). The limitations period begins to accrue on "(A) the date of judgment in any action under this chapter for recovery of such costs or damages, or (B) the date of an administrative order . . . or entry of a judicially approved settlement with respect to such costs or damages." 42 U.S.C. § 9613(g)(3). Where there is an administrative settlement resolving CERCLA liability, the statute of limitations is triggered on the date the settlement is entered into. *See New York v.*

*Solvent Chem. Co., Inc.*, 664 F.3d 22, 27 (2d Cir. 2011) (statute of limitations for contribution claim began running when the defendant entered into a consent decree with State of New York); *Chitayat*, 702 F. Supp. 2d at 83 (same).

The BCA Plaintiffs entered into the BCA on December 31, 2010, the date by which it became effective by virtue of the signature of the DEC Commissioner's designee.[3] All of the parties entered a tolling agreement effective December 30, 2013, just shy of three years from the date of the BCA, which remained in effect until the Complaint was filed. Therefore, the BCA Plaintiffs' contribution claim is timely.

In arguing otherwise, Defendant correctly asserts that the "triggering event" for the statute of limitations period was the date that the BCA Plaintiffs "resolved their CERCLA liability," but incorrectly identifies that date as February 11, 2010, the date that HLP, West 17th Street and PLH were accepted into the BCP. For its interpretation of the relevant triggering event, Defendant purports to rely on case law holding that the triggering event for the statute of limitations is the date CERCLA liability is resolved. Each of the cited cases, however, considers the "resolution date" to be the date of the relevant agreement containing a release of liability. *E.g.*, *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552, 558 (6th Cir. 2007) ("[T]he statute of limitations for contribution actions runs from the entry of the settlement . . . .") (internal quotation marks omitted); *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 840 F. Supp. 2d 1013, 1034-35 (S.D. Ohio 2011) ("[T]he proper statute of limitations to apply to a contribution action pursuant to § 113(f)(3)(B) . . . began to run at the date of the consent decree.") (internal citation omitted); *Chitayat*, 702 F. Supp. 2d at 83 (same).

---

[3] Section V(C) of the BCA provides that "[t]he effective date of th[e] Agreement is the date it is signed by the Commissioner or the Commissioner's designee; provided however, that Applicants have been accepted into the BCP under the provisions of the BCP Act in effect in 2007 and the Certificate of Completion issued under this Agreement will include a statement to this effect."

Defendant cites four provisions of the statutory law governing the BCP for the proposition that "[a]cceptance of an application is significant because at that point a party becomes an 'Applicant' and that in turn triggers its entitlement to the liability release by operation of law." The cited provisions address the type of individual BCA applicants who may enter into the program; requirements for entry into the program; the nature of the program; and the limitation of liability for which the applicant is ultimately eligible upon completion of the program.[4] While resolution of liability may be the natural and intended consequence of entry into the BCP, an applicant's entry into the program does not itself resolve the applicant's liability and therefore is not the relevant triggering event for statute of limitations purposes.

Defendant also argues that the BCA Plaintiffs asked the state court to order their immediate acceptance into the BCP "*nunc pro tunc*" in 2007, and therefore, the BCA Plaintiffs are judicially estopped from arguing that they were not admitted until a later date. Because admission into the program does not trigger the statute of limitations period, this argument does not alter the conclusion reached above.

>   ii.   *Non-BCA Plaintiffs*

Because the non-BCA Plaintiffs are eligible to proceed under § 107, they may not assert a claim under § 113. Accordingly, Defendant's motion to dismiss the § 113 claim is granted as to the non-BCA Plaintiffs.

**C.   Common Law Claims for Restitution and Indemnification**

Defendant moves to dismiss Plaintiffs' common law claims for restitution and indemnification under New York law, asserting that such claims are preempted by CERCLA.

---

[4] *See* N.Y. ECL § 27-1405 (defining "[a]pplicant" as "a person whose request to participate in the brownfield cleanup program under this title has been accepted by the department"); *id.* § 1407 (outlining procedure for requests to participate in program); *id.* § 1409 (addressing substance of brownfield cleanup agreements); *id.* §§ 1419, 1421 (describing certificate of completion and limitation of liability provided therein).

13

The motion is granted to the extent Plaintiffs seek costs that are generally recoverable under CERCLA, even though such costs may not ultimately be recoverable by Plaintiffs because of CERCLA conditions or limitations.

Second Circuit precedent makes clear that common law claims seeking costs that fall within the scope of CERCLA are preempted by CERCLA. *Bedford Affiliates v. Sills*, 156 F.3d 416, 427 (2d Cir. 1998), *overruled on other grounds by W.R. Grace*, 559 F.3d at 90; *Niagara*, 596 F.3d at 139. The authority is less clear as to whether CERCLA also preempts common law claims for costs that are not covered by CERCLA. The Second Circuit's analysis in *Niagara* suggests that such claims are not preempted by CERCLA. In *Niagara*, the Second Circuit considered, first, whether the plaintiff's contribution claims under New York law were preempted by CERCLA and second, whether the plaintiff's restitution and unjust enrichment claims were preempted. In addressing preemption of the contribution claims, the court held that "§ 113 was intended to provide the only contribution avenue for parties with response costs *incurred under CERCLA*." *Id.* at 138 (emphasis added). The court concluded that "[b]ecause [plaintiff] did not incur costs outside of CERCLA, [it] has no grounds for contribution under New York law . . . ." *Id.* at 139. The court rejected plaintiff's claims for unjust enrichment and restitution for "substantially the same reasons," observing that "allowing unjust enrichment claims *for CERCLA expenses* would again circumvent the settlement scheme, as PRPs could seek recompense for a legally unjustifiable benefit outside the limitations and conditions of CERCLA." *Id.* at 138 (emphasis added). *Niagara* thus appears to establish a rule that state law claims are not preempted by CERCLA insofar as they seek recovery of costs that do not fall within the ambit of CERCLA. *Accord MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 404 (N.D.N.Y. 2013) (finding that *Niagara* court's reasoning "clearly implie[s]"

14

that "there *are* grounds for state-law contribution when the PRP *has* incurred costs outside of CERCLA . . . .") (emphasis in original).

Here, the Complaint asserts that Plaintiffs seek costs that are not recoverable under CERCLA. While the Complaint does not specify the nature of those costs or the reason that they are not covered by CERCLA, drawing all inferences in Plaintiffs' favor at this stage of the proceedings, the Complaint sufficiently pleads a request for costs not recoverable under CERCLA. Defendant's motion to dismiss the indemnification and restitution claims is therefore denied as to costs that are not generally available under CERCLA, and is granted as to costs falling within the ambit of CERCLA.[5]

### D. Declaratory Relief

Defendant moves to dismiss Plaintiffs' claims for a declaratory judgment holding Defendant liable for all future costs of remediation under CERCLA and state law. CERCLA expressly directs entry of a declaratory judgment for future costs under CERCLA. *See* 42 U.S.C. 9613(g)(2)(B) ("In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."); *Gussack Realyu Co. v. Xerox Corp.*, 224 F.3d 85, 92 (2d Cir. 2000) ("The proper remedy for future response costs is . . . a declaratory judgment award dividing future response costs among responsible parties."). Similarly, declaratory relief is available under New York law concerning future hazardous waste clean-up costs. *See Sweet v. Texaco, Inc.*, 67 A.D.3d 1322, 1324, 890 N.Y.S.2d

---

[5] Defendant also asserts that Plaintiffs fail to state common law claims because "they are at fault for maintaining hazardous materials on their property and delaying cleanup . . . ." Because they involve factual allegations yet to be substantiated through discovery, these arguments are properly considered on a motion for summary judgment and are denied on that basis without prejudice to renewal at a later date.

233, 235 (N.Y. App. Div. 2009). Consequently, Defendant's motion to dismiss the claims for declaratory relief is denied, subject to preemption of the state law claim as discussed above.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part as follows:

- The first claim for cost recovery under CERCLA § 107 is dismissed as to the BCA Plaintiffs, but not as to the non-BCA Plaintiffs;

- The second claim for contribution under CERCLA § 113 is dismissed as to the non-BCA Plaintiffs, but not as to the BCA Plaintiffs;

- The third and sixth claims for a declaratory judgment that Defendant is liable for future costs of remediation under CERCLA and state law stands, except to the extent that the declaratory relief sought under state law is generally available under CERCLA;

- The fourth claim for indemnification under state law is dismissed in part, to the extent the relief sought is generally available under CERCLA;

- The fifth claim for restitution under state law is dismissed in part, to the extent the relief sought is generally available under CERCLA.

The Clerk of Court is directed to close the motion at Docket No. 27.

Dated: November 21, 2014
      New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

16