# CAHILL

April 6, 2015

CONFIDENTIAL

Re:   *HLP Properties, LLC, et al v. Consolidated Edison Co. of New York, Inc.*, No. 14-CV-1383 (LGS) (S.D.N.Y.)

Dear Judge Schofield:

      Pursuant to Paragraph 21 of the Protective Order dated October 20, 2014, Dkt. 117 (which incorporates the Court's Individual Rule I (C) (3)), I write on behalf of Defendant Consolidated Edison Company of New York, Inc. ("Con Edison") regarding the attached Letter to Your Honor that Con Edison wishes to file in this case regarding Plaintiffs' privilege claims.  The highlighted portions of the Letter reflect material designated as confidential by Plaintiffs.  Con Edison is amenable to redacting the highlighted language should the Court determine that such redactions are in order.  *See* Individual Practice Rule I(C)(3) ("The party with an interest in confidential treatment bears the burden of persuasion.  If this party is not the filing party, the party with an interest in confidential treatment shall promptly email a letter to the Court explaining why it seeks to have certain documents filed in redacted form or under seal.").

      Respectfully submitted,

/s/ Thomas J. Kavaler

Thomas J. Kavaler

The Honorable Lorna G. Schofield
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

<u>VIA EMAIL</u>

cc:   Counsel of record



April 6, 2015

CONFIDENTIAL

Re: *HLP Properties, LLC, et al* v. *Consolidated Edison Co. of New York, Inc.*, No. 14-CV-1383 (LGS) (S.D.N.Y.)

Dear Judge Schofield:

Con Edison submits this letter to request a pre-motion conference to move to compel Plaintiffs to produce documents with third party consultant Langan Engineering improperly withheld on attorney-client privilege and work product grounds. Although Con Edison has raised this issue with the Court in three letters in the past, and sent Plaintiffs multiple letters and emails addressing this topic, Plaintiffs have repeatedly responded that they need more time to "meet and confer" with Con Edison. On February 20, after Con Edison raised this issue with the Court for the third time (by email on 2/16/15 at 8:07PM), the Court directed the parties to confer further (Dkt. No. 208). Con Edison has exchanged multiple emails with Plaintiffs on this issue since then and sought testimony from Plaintiffs' witnesses; these exchanges have confirmed that Plaintiffs have no sound legal basis for withholding over 7,000 communications with Langan. Con Edison is prejudiced by Plaintiffs' withholding of these documents and the deadline for production of such documents has passed. Con Edison therefore requests that the Court address this critical issue on an expedited basis.

Langan is Plaintiffs' environmental consultant and played a primary role in drafting environmental reports submitted to the New York State Department of Environmental Conservation (DEC) in connection with Plaintiffs' participation in the Brownfield Cleanup Program (BCP). Plaintiffs seek to rely on such documents to establish Con Edison's liability and the extent of "MGP contamination" at the Site. Plaintiffs also rely on this work by Langan to assert that Con Edison should reimburse Plaintiffs for Langan's fees as "response costs" under CERCLA. In this context, it is clear that Plaintiffs have improperly withheld thousands of documents with Langan that will shed light on remediation issues and Con Edison's defenses.[1] For the reasons discussed below, Plaintiffs' effort to cloak these documents in a cloud of privilege must fail.

***Plaintiffs Have Admitted That Langan is Not the Functional Equivalent of In-House Staff***

As a general rule, the attorney-client privilege only applies to communications between the attorney and the client and a party faces a high burden to establish the basis for any privilege with a third party. *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994). Nonetheless, Plaintiffs have asserted that Langan was the "functional equivalent of an in-house [team] . . . having authority to make decisions and statements on [Plaintiffs'] behalf, and seeking and receiving legal advice from [Plaintiffs'] counsel with respect to performance of its duties." Feb. 19 Mastro Letter to Court, at p. 2 (by email at 11:38PM) (quoting *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 216 (S.D.N.Y. 2001)).

Plaintiffs have now admitted that this is simply not the case. Plaintiffs' company representative Gary Dorin testified that Plaintiffs did not consider Langan or its employees to be employees of Plaintiffs or the equivalent of their in-house staff. Pls. 30(b)(6) Dep. Tr. pp. 321-22 ("Q: Was [Mr. Landes, of Langan] ever an employee of the plaintiffs? A. No. Q: Did the plaintiffs consider him to be

---

[1] Plaintiffs seek to recover Langan's fees as "response costs" while simultaneously withholding the documents underlying Langan's work at the Site – an untenable position. See *Arista Records LLC v. Lime Group LLC*, 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011) (precluding defendant from presenting evidence on issue on which defendant had previously claimed privilege).

CONFIDENTIAL

an employee? A: Not to my knowledge.  Q. How about Michael Burke [of Langan] …? A. No. …Q: Do plaintiffs regard Langan's staff as the equivalent of their in-house staff? A: No.").   Besides being Plaintiffs' Vice President and chosen company representative, Mr. Dorin is also company counsel.  As such, he would have full awareness of whether Langan acted in a privileged capacity for Plaintiffs.  Larry Perez, Plaintiffs' Vice President of Construction and the point person for Langan's work, explained that Langan was hired as an external third party consultant responsible for remediation-related work for a discrete period of time.  Perez Dep. Tr. p.13 ("Q: And what was the principal purpose for which Langan was retained by HLP?  A: It was to develop the remediation design submitted to New York State DEC for approval and to oversee the actual remediation work.  Q: And that gives us an overview of Langan's activities really from 2011 through 2014?  A: Yes.").  Joel Landes, the Senior Consultant representing Langan, testified that Langan's "primary responsibility" was remediation-related and did not recall being asked to consult on litigation.  Landes Dep. Tr. p.19, 187.

*Langan is Not a Translator or Interpreter for Obtaining Legal Advice*

Plaintiffs have also relied on *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961), to argue that their communications with Langan are protected because the consultant's presence is "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."  However, "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client."  *Ackert*, 169 F.3d at 139; *see also Colton v. United States,* 306 F.2d 633, 639 (2d Cir. 1962).  Moreover, *Kovel* instructs that "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.  If what is sought is not legal advice but only [the consultant's] service . . . *or if the advice sought is the [consultant's] rather than the lawyer's, no privilege exists*."  296 F.2d at 922 (emphasis added) (internal citations omitted).  According to *Kovel*, whether the communication is protected depends on whether the third party's participation is meant to improve the comprehension of the communication between the attorney and the client, similar to the function of a translator or an interpreter; the communication is *not* protected if the third party is providing its own independent services and advice.  *Id.* at 921-22.

The principle of *Kovel* has no application here as Plaintiffs' privilege log fails to illustrate that Plaintiffs' attorneys are relying on Langan to translate, interpret, or help comprehend information from Plaintiffs.  Rather, all indications in the sparse and generic privilege log entries provided[2] are that it is the advice of Langan, not of counsel, that is being sought.  Langan's role was principally to "develop the remediation design submitted to New York State DEC for approval and to oversee the actual remediation work," (Perez Dep. Tr. p.13), a specific function that has been directly held *not* to be protected by the attorney-client privilege.  *Phelps*, 852 F. Supp. at 161, 162 (communications with environmental consultants not privileged where consultants "were not employed by [defendant's] attorneys specifically to assist them in rendering legal advice," but instead "to formulate a remediation

---

[2] Plaintiffs' privilege log entries provide generic and repetitive explanations that make it impossible to determine if Langan is translating or interpreting information for Plaintiffs' counsel.  For example, in multiple instances, Joel Landes of Langan created handwritten notes "reflecting confidential attorney-client communications with Legal* regarding development [or remediation] issues," (s*ee, e.g.*, P2129, P2138, P2146), or Langan composed communications with non-attorney Jeff Spiritos, "reflecting confidential attorney-client communications with Legal* [or Gary Dorin*] regarding remediation issues," (*see, e.g.,* P451-P453).  In these entries Langan is not even communicating directly with Plaintiffs' counsel and the word "reflecting" does not demonstrate that Langan is assisting to comprehend any information for the purpose of obtaining legal advice.  Instead, it appears that what *may* have been privileged information has now been waived when revealed to third party Langan.  Further telling is that hundreds of documents with these same generic descriptions about "reflecting confidential attorney-client communications … regarding remediation issues" have admittedly been erroneously withheld as privileged.  *See* Con Edison's Apr. 6 Letter on Plaintiffs' Privilege Log, to be submitted by email today.

CONFIDENTIAL

plan acceptable to the NYSDEC and to oversee remedial work at the Property."); *ECDC Envt'l, L.C. v. NY Marine and General Ins. Co.*, 1998 WL 614478, at *7, *8-*9 (S.D.N.Y. June 4, 1998) (consultants retained "for their expertise concerning the effectiveness of the clean-up" and who did "not appear . . . [to be] retained to explain or analyze any pre-existing confidential information" are not within any privilege). Indeed, "[t]here are few, if any, conceivable circumstances where a scientist or engineer employed to gather data should be considered an agent within the scope of the privilege since the information collected will generally be factual, obtained from sources other than the client." *Phelps*, 852 F. Supp. at 162; *Merck Eprova v. Gnosis*, 2010 WL 3835149, at *2-*3 (S.D.N.Y. Sept. 24, 2010).

Although Langan has expertise, in order for Langan's communications to be protected by attorney-client privilege Plaintiffs need to have established that Langan was communicating information that Plaintiffs' attorneys could not understand without Langan's assistance. *In re Refco Sec. Litig.*, 280 F.R.D. 102, 104-105 (S.D.N.Y. 2011). Plaintiffs have provided no indication in their vague, repetitive, and generic privilege log entries that Langan was a translator. *See* Perez Dep. p.132 ("Q: Did Sive Paget & Riesel communicate with Langan? A: I don't know. Q: Was Langan present when you met with Sive Paget & Riesel? A: I don't recall . . . ."). Instead, all evidence points to the fact that Langan is an outside advisor to Plaintiffs providing directly the same services discussed in *Phelps Dodge* and *ECDC Envt'l*, *infra*, and supplying "important," but not privileged information. *Ackert*, 169 F.3d at 139. Additionally, Plaintiffs have retained a leading environmental law firm, Sive Paget & Reisel, counsel who does not need to place critical reliance on the translation services of an environmental consultant.

*Langan's Remedial Oversight Work Was Not In Anticipation of Litigation*

Any communication between Plaintiffs and their outside consultant that is not prepared or obtained "because of" existing or expected litigation is not protected by attorney-work product protection. *U.S. v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998). Plaintiffs' company representative testified that Langan did not receive a litigation hold notice from Plaintiffs until 2013 because until that point, Langan was consulting on remediation plans, not on litigation. Pls. 30(b)(6) Dep. Tr. p.195, 247-48 ("Q: How long has Langan been acting as litigation support in this litigation? A: … obviously with respect to this litigation sometime in 2014."); *see also* Dorin Dep. Tr. pp.120-121 (testifying Langan did remediation work); Perez Dep. Tr. p.13 (same). Yet, Plaintiffs have also withheld hundreds of Langan documents dated between 2004 and 2012 as protected attorney work-product, asserting that they are "regarding litigation,"[3] as well as hundreds more withheld on attorney-client and work product grounds because they are regarding remediation issues. The work product doctrine, however, "does not immunize litigants or their consultants from disclosing the underlying facts obtained during the course of their investigations." *Abbo-Bradley v. City of Niagara Falls*, 293 F.R.D. 401, 408 (W.D.N.Y. 2013); *see also Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003). Facts related to the work conducted by Langan are discoverable and not protected by any privilege. *Id.*

Accordingly, Con Edison respectfully request that the Court compel Plaintiffs to produce forthwith all documents withheld involving Langan employees as there is no colorable basis for a claim of privilege over these documents.

Respectfully submitted,
/s/ Thomas J. Kavaler
Thomas J. Kavaler

---

[3] Con Edison cannot quantify this exact number, but for example, Plaintiffs have withheld at least 250 such documents that include Joel Landes during this time period; at least 80 other Langan employees appear on Plaintiffs' privilege log according to Plaintiffs' affiliations list.

80 Pine Street | NY, NY | 10005-1702 | Phone: 212.701.3000 | Fax: 212.269. 5420 | Cahill.com    CAHILL GORDON & REINDEL LLP

3

CONFIDENTIAL

The Honorable Lorna G. Schofield
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

VIA EMAIL

cc: Counsel of record (via EMAIL)