UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

HLP PROPERTIES, LLC; WEST 17TH
PROPERTY, LLC; WEST 58TH STREET MINI
STORAGE CORP.; and PLH ENTERPRISES,
INC.

                                    Plaintiffs,

                -against-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                                    Defendant.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/28/15

14 Civ. 1383 (LGS)

**<u>OPINION AND ORDER</u>**

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs HLP Properties, LLC ("HLP"), West 17th Property, LLC ("West 17th Street"), West 58th Street Mini Storage Corp. ("W58MS") and PLH Enterprises, Inc. ("PLH") move for partial judgment on the pleadings on their claims under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq., against Defendant Consolidated Edison Company of New York, Inc.  Plaintiffs request an order holding that (1) Defendant is liable to Plaintiffs for their remediation costs; (2) Defendant is responsible for at least 90 percent of Plaintiffs' remediation costs; and (3) Defendant's double recovery argument fails as a matter of law.  Defendant cross-moves to strike three of Plaintiffs' exhibits in support of their motion pursuant to Federal Rule of Evidence 408.  For the reasons below, Plaintiffs' motion is granted in part and denied in part, and Defendant's cross-motion is granted.

**I.    BACKGROUND**

      For purposes of Plaintiffs' motion, the following facts are drawn from the Complaint, the Answer and the Answer to Counterclaims, and are construed in the light most favorable to

Defendant as the non-moving party.

The real property at issue in this case (the "Site") is located in Manhattan between 17th and 18th Streets and 10th and 11th Avenues. The Site and surrounding plots of land were previously owned by Defendant's predecessors, Manhattan Gas Light Company and the Consolidated Gas Company of New York. Defendant's predecessors operated a manufactured gas plant ("MGP") in the area from 1834 until the early 1900s, which supplied areas of Manhattan north of Canal Street with fuel and lighting gas using "state-of-the-art technology" for that period. After 1917, the Site's subsequent owners were unaffiliated with Defendant. In 1983, Plaintiffs purchased the Site for $3.9 million.

The Site is contaminated with coal tar and other hazardous substances. The MGP operations produced coal tar, but other contamination at the Site was not caused by Defendant or its predecessors. Plaintiffs have "maintain[ed] hazardous materials on [the Site]," "owned, operated and generated hazardous substances at the Site" and delayed in cleaning up the Site.

Starting in 2002, Defendant began the process for remediation of the Site, acting pursuant to a Voluntary Cleanup Agreement administered by the New York State Department of Environmental Conservation ("DEC"). Defendant conducted investigations at the Site and developed a recommended remediation program for it under the Voluntary Cleanup Agreement.

In 2003, the New York State Legislature created the Brownfield Cleanup Program ("BCP") to encourage remediation and development of contaminated property through a statutory release of liability and substantial tax credits. In order to take advantage of these incentives and notwithstanding Defendant's efforts to remediate the Site, Plaintiffs applied to the BCP to take over the remediation. Plaintiffs withdrew their application in 2006 after Defendant objected and the DEC did not act on the application. In 2007, Plaintiffs applied to the BCP

again, and Defendant submitted a concurrent application to transfer its obligations.  After the DEC denied both Plaintiffs' and Defendant's applications, Plaintiffs successfully challenged the denial in state court, and the DEC was required to accept the Site into the BCP.  Plaintiffs West 17th Street and HLP (the "BCA Plaintiffs")[1] and the DEC entered into the Brownfield Site Cleanup Agreement ("BCA"), which became effective in December 2010, and Plaintiffs took over cleanup of the Site from Defendant.

On December 17, 2014, after Defendant filed its Answer, Plaintiffs completed their remediation plan and obtained a Certificate of Completion from the DEC.  Upon successfully completing the remediation program, Plaintiffs will be eligible for tens of millions of dollars in BCP tax credits that far exceed Plaintiffs' cleanup costs.  Plaintiffs also stand to benefit from the substantial increase in the value of the Site as a direct result of the cleanup.  At the time the Answer was filed, the Site was under contract to be sold for over $800 million.  After the filing of the pleadings, Plaintiffs sold the Site in May 2015 for $870 million.

In an Opinion and Order dated November 21, 2014, Plaintiffs' claim for: (1) cost recovery under CERCLA § 107 was dismissed as to the BCA Plaintiffs, but not as to the non-BCA Plaintiffs; and (2) contribution under CERCLA § 113 was dismissed as to the non-BCA Plaintiffs, but not as to the BCA Plaintiffs.

## II.   STANDARD

The Court reviews motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) under the same standard as Rule 12(b)(6) motions to dismiss. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  The Court accepts as true all of the non-moving party's well-pleaded factual allegations and draws all reasonable

---

[1] W58MS and PLH are collectively referred to as the "non-BCA Plaintiffs."

3

inferences in favor of the non-moving party.  *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011).  Judgment on the pleadings may be granted "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."  *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

On a Rule 12(c) motion, the Court may consider "the complaint, the answer, any written documents attached to them, . . . any matter of which the court can take judicial notice for the factual background of the case[,] . . . any written instrument attached . . . as an exhibit, materials incorporated . . . by reference, and documents that, although not incorporated by reference, are integral" to the pleadings.  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted).

### III.  DISCUSSION

#### A.  Statutory Framework

CERCLA was enacted in 1980 to address the "serious environmental and health risks posed by industrial pollution."  *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009).  Remedial in nature, CERCLA was "designed to encourage prompt and effective cleanup of hazardous waste sites."  *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010).  Towards that end, "property owners are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there."  *Id.*  "CERCLA does provide property owners an avenue of reprieve; it allows them to seek

4

reimbursement of their cleanup costs from others in the chain of title or from certain polluters -- the so-called potentially responsible parties ('PRP's)." *Id.*

"Private parties have two options to recover their cleanup costs from other PRPs." *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 220 (2d Cir. 2014). First, under CERCLA § 107(a), a property owner or operator that has incurred costs in remediating a contaminated site may bring a cost recovery action against a PRP. *Id.*; *see also* 42 U.S.C. § 9607(a)(4)(B). Second, under CERCLA § 113, a party may seek contribution from other PRPs if, among other things, it has settled its CERCLA liability with a state through an administrative settlement. 42 U.S.C. § 9613(f)(3)(B).

The BCA Plaintiffs have a CERCLA § 113 claim against Defendant, and the non-BCA Plaintiffs have a CERCLA § 107 claim against Defendant. In this case, the analysis for both are the same. CERCLA envisions a two-step inquiry for a § 113(f) claim: "First, the court must determine whether the defendant is 'liable' under CERCLA § 107(a); Second, the court must allocate response costs among liable parties in an equitable manner." *Goodrich Corp. v. Town of Middlebury*, 311 F.3d 154, 168 (2d Cir. 2002). The same analysis applies to the non-BCA Plaintiffs' claim for cost recovery under CERCLA § 107 because Defendant has counterclaimed under CERCLA § 113.[2] *See FirstEnergy Corp.*, 766 F.3d at 220 ("[A] PRP who has been sued under section 107(a) to contribute to cleanup costs . . . can seek contribution from other PRPs . . . ."); *Niagara Mohawk Power Corp.*, 596 F.3d at 121 n.8 (stating "§ 107(a) . . . does not preclude defendant . . . from asserting counterclaims . . . for contribution under § 113(f)(1),

---

[2]   In this motion, both parties assume that all of Plaintiffs' claims will be resolved as CERCLA § 113 contribution claims. In Plaintiffs' memorandum of law in support of their motion, Plaintiffs also assert that the "Court should . . . reinstate the non-BCA Plaintiffs' [§ 113] contribution claims against [Defendant]" because Defendant brought a § 107 counterclaim against Plaintiffs after the motion to dismiss was decided.

5

effectively converting the § 107(a) action into an apportionment of liability"). Plaintiffs have moved for judgment on the pleadings with respect to both steps in the inquiry.[3]

### B. Defendant's Liability for Remediation Costs

Plaintiffs assert that Defendant is a liable party within the meaning of CERCLA § 107(a), and Defendant does not challenged this assertion in its opposition papers. "[A] finding of liability under § 107(a) requires proof" that: (1) the Defendant is a "responsible part[y]" under 42 U.S.C. § 9607(a); (2) the Site is "a facility as defined in § 9601(9)"; (3) "there is a release or threatened release of hazardous substance" at the Site; (4) Plaintiffs "incurred costs responding to the release or threatened release"; and (5) "the costs and response actions conform to the national contingency plan." *Goodrich Corp.*, 311 F.3d at 168.

These elements are met. First, CERCLA defines a PRP as "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). The Answer states that Defendant "is the legal successor-in-interest to both Manhattan Gas Light Company and the Consolidated Gas Company, and to those companies' liabilities under CERCLA" and that these predecessors "owned and operated" a MGP at the Site that "release[d] and dispos[ed] of substantial amounts of coal tar and related hazardous substances." Accordingly, Defendant is a PRP.

---

[3] Where a plaintiff brings a § 107(a) claim and a defendant brings a § 113 counterclaim, at the first stage, "each party bears the burden of showing that its opponent is liable under the terms of § 107(a)." *Yankee Gas Servs. Co. v. UGI Utilities, Inc.*, 852 F. Supp. 2d 229, 240 (D. Conn. 2012). At the second stage, the court in *Yankee Gas* found the burden of proof did not matter. *Id.* (stating that "[r]ather than worrying about burdens of proof, liable parties simply need to present their best evidence and arguments as to what allocation proves most equitable"). The court reasoned that "it would be strange to think that a court might [] refuse to allocate costs equitably between the . . . liable parties" and that it would not "make sense to say that one party had a burden of proving that the court should allocate equitably." *Id.*

Second, a "facility" includes "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed . . . ." 42 U.S.C. § 9601(9).  The Answer admits that "significant levels of hazardous substances are present in both soils and groundwater at the Site," so the Site is a "facility" under CERCLA.  Third, the Answer states that the MGP's production released coal tar, which is a "hazardous substance" under CERCLA.  *See FirstEnergy Corp.*, 766 F.3d at 212 (reviewing apportionment of cleanup costs under CERCLA from remediating coal tar contamination).

Fourth, the Answer indicates that Plaintiffs have incurred costs remediating the Site as part of the BCP.  Finally, compliance with a national contingency plan may be established by "conduct[ing] a response under the monitoring, and with the ultimate approval, of the state's environmental agency."  *Niagara Mohawk Power Corp.*, 596 F.3d at 137.  The Answer states that the BCA Plaintiffs remediated the site under the BCP, a New York program, and that the DEC will issue a Certificate of Completion to the BCA Plaintiffs upon completion of the remediation.  According to an attachment to Plaintiffs' Answer to the Counterclaims, Plaintiffs were awarded the Certificate of Completion on December 17, 2014.  Accordingly, based solely on the pleadings, all five factors are satisfied, and Defendant is a liable party within the meaning of CERCLA § 107(a).  This analysis, however, does not end the inquiry into the response costs that Plaintiffs may recover from Defendant.

### C.  Equitable Allocation of Response Costs

Plaintiffs move for a finding, based on the pleadings, that Defendant is responsible for at least 90 percent of Plaintiffs' remediation costs.  That application is denied because the pleadings lack factual detail and place material facts in dispute.

7

CERCLA's "primary purposes are axiomatic: (1) to encourage the 'timely cleanup of hazardous waste sites;' and (2) to 'plac[e] the cost of that [cleanup] on those responsible for creating or maintaining the hazardous condition.'" *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 88 (2d Cir. 2009) (quoting *Consol. Edison v. UGI Utils., Inc.,* 423 F.3d 90, 94 (2d Cir. 2005)).  In apportioning costs, the Court "must allocate response costs among liable parties in an equitable manner." *Goodrich Corp.*, 311 F.3d at 168.  CERCLA "does not limit courts to any particular list of factors." *Id.* at 176 (quoting *Bedford Affiliates v. Sills,* 156 F.3d 416, 429 (2d Cir. 1998), *overruled on other grounds*, *W.R. Grace & Co.*, 559 F.3d at 90).  Instead, CERCLA's "'expansive language . . . affords a district court broad discretion to balance the equities in the interests of justice.'" *FirstEnergy Corp.*, 766 F.3d at 238 (quoting *Bedford Affiliates*, 156 F.3d at 429).

The Answer raises at least the following disputed or unresolved factual issues that may bear on the equitable allocation of response costs between Plaintiffs and Defendant:

(1)   The comparative responsibility for the contamination between Defendant's predecessors, for which Defendant is responsible, and all others, for whom Plaintiff is alleged to be responsible, *see Niagara Mohawk Power Corp.*, 596 F.3d at 131 ("[W]hen damages are apportioned, . . . the relative strength of the evidence of liability becomes a relevant factor," including the quality of the evidence and the extent of a defendant's polluting activity.);

(2)   The amount of Plaintiffs' remediation costs, and whether any portion is not recoverable because it exceeds the "necessary costs of response," *see* 42 U.S.C. §§ 9607(a)(4)(B), 9613(f)(1);

(3)   The amount of remediation costs Defendant incurred under the VCA, *see id.*;

8

    (4)    Any delay Plaintiffs caused in remediating the Site that increased or prolonged harm as a result of the delay, *see, e.g.*, *Bedford Affiliates*, 156 F.3d at 430 (finding no abuse of discretion in allocating five percent of contamination to owner that delayed three years before commencing cleanup);

    (5)    The increase in value of the Site, if any, attributable to Plaintiffs' remediation rather than external factors like market appreciation, *see FirstEnergy Corp.*, 766 F.3d at 239-41 ("The district court reasonably took into account the fact that [a party] would benefit from the increased property value after remediation . . . ."); and

    (6)    Other benefits that Plaintiffs received from remediating the Site, including the amount of tax credits from remediation, *cf., e.g.*, *id.* at 238, 241 (finding no error where district court reduced remediating party's recovery to account for insurance proceeds received, and assigned partial liability to owner that would benefit from increased property value after remediation and caused delays in remediation).

Allocating costs on this record is inappropriate. The purpose of equitable allocation is "to reach a just result." *Niagara Mohawk Power Corp.*, 596 F.3d at 130. This determination requires a careful weighing of the relevant factors because "[e]ach hazardous waste site is unique in its combination of commercial activities, substances present, and history." *Id.* at 131; *accord NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 700-01 (7th Cir. 2014) (stating that "one-size-fits-all bright-line rule" is inappropriate because a "district court's decision must reflect its consideration of the particulars of the case").

Here, the pleadings provide an insufficient basis to determine what factors are relevant to an equitable allocation and what weight to give those factors. First, many of the issues identified

above raise complex and nuanced factual questions that are not easily reduced to a formula at this stage. For example, even assuming Plaintiffs "delayed" in remediating the Site, many issues remain, including questions concerning: (1) how much of that delay was avoidable; (2) what caused the delay; (3) what impact the delay had; and (4) whether that delay effects equitable allocation and if so, by how much.

Second, the Answer asserts that additional equitable factors outside the pleadings may be relevant. Defendant is entitled to discovery to ensure that the relevant equities are considered. Concluding now that Defendant is responsible for a particular fixed percentage of the remediation costs in a factual vacuum is both unnecessary and unwarranted.

In advocating a contrary result, Plaintiffs assert that Defendant should bear at least 90 percent of the response cost because Defendant is the polluter and Plaintiffs are the "non-polluting, cooperating current landowners." Plaintiffs contend that CERCLA's goals of holding polluters responsible would be undermined if an admitted polluter were absolved from paying all or almost all of the remediation costs stemming from its contamination. However, the Answer does not concede that Defendant was the sole polluter. The Answer alleges that "Plaintiffs are at fault for maintaining hazardous materials on their property and delaying cleanup of the property"; Plaintiffs or their predecessors "owned, operated and generated hazardous substances at the Site"; and "releases at the Site [presumably non-MGP contamination] were caused by persons other than Defendant." The Answer asserts that any recovery by Plaintiff must be reduced by Plaintiffs' own liability at the Site, and pleads three counterclaims to that effect.

Even assuming that the lion's share of contamination was caused by Defendant's predecessors -- although the pleadings provide no basis for that assumption -- equitable factors that a district court may consider have not been limited to "those factors directly related to the

harm to the environment, [and] the parties' causal relationship to that harm . . . ." *Goodrich Corp.*, 311 F.3d at 176.

In determining how to allocate costs equitably, the issue is not simply who is "innocent" and who is "guilty." The Second Circuit's discussion of the collateral source rule is instructive. The collateral source rule is "a tort doctrine prohibiting the tortfeasor from reducing its liability by the amount of benefits conferred on the injured party from other sources." *Moran Towing & Transp., Co. v. Lombas*, 58 F.3d 24, 26 (2d Cir. 1995). In holding that the collateral source rule "does not apply in CERCLA cases," the Second Circuit reasoned that the "policy underlying the collateral source rule -- to provide the innocent party with the benefit of any windfall -- is simply not advanced in [CERCLA] cases." *FirstEnergy Corp.*, 766 F.3d at 238 (quoting *Friedland v. TIC-The Indus. Co.*, 566 F.3d 1203, 1207 (10th Cir. 2009)). "Rather, in resolving contribution claims under CERCLA, a 'court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.'" *Id.* (quoting 42 U.S.C. § 9613(f)(1)); *accord Friedland*, 566 F.3d at 1207 ("[P]ermitting a CERCLA contribution-action plaintiff to recoup more than the response costs he paid out of pocket flies in the face of CERCLA's mandate to apportion those costs equitably among liable parties.").

The cases that Plaintiffs cite are not to the contrary. Plaintiffs submitted a summary chart of CERCLA equitable allocation cases to argue that, in cases where the property owner did not contribute to, profit from or exacerbate the pollution by delaying or frustrating its remediation, the owner was allocated no more than 10 percent of the response cost. None of these cases, however, is similar to this one in which the owner sold the property after remediation and earned hundreds of millions of dollars more than it invested. Defendant raises a legitimate question of

how much of that profit, if any, is a return on the investment of remediation expenses. That question cannot be addressed on the pleadings.

Plaintiffs also have not cited a single case in which a court has made an equitable allocation of costs between responsible parties based solely on the pleadings. In fact, all but one of the cases in Plaintiffs' summary chart that awarded the owner less than 10 percent of the response cost occurred after trial. In the single case that did not go to trial, the parties asked the court to allocate costs based on stipulated facts. On this motion there are no detailed facts, and the pleadings place many general facts in dispute. It is hard to imagine a case less suitable for judgment on the pleadings.

### D.  Defendant's Double Recovery Argument

The Answer asserts as a defense that CERCLA prohibits Plaintiffs from double recovery of CERLA response costs, including from "a very large increase in the property's value." Plaintiffs counter that the prohibition against double recovery is limited to CERCLA § 114(b) and seek as a part of their Rule 12(c) motion to strike the double recovery defense. This application is denied.

Plaintiffs are incorrect that the double recovery bar is limited to § 114(b). Section 114(b), codified as 42 U.S.C. § 9614(b), provides that "[a]ny person who receives compensation for removal costs or damages or claims pursuant to [CERCLA] shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law," and vice versa. Second Circuit precedent, however, does not support Plaintiffs' narrow reading of CERCLA to limit double recovery to § 114(b). *See FirstEnergy Corp.*, 766 F.3d at 238 (holding district court did not err in applying [plaintiff] insurance settlement to reduce [defendant's] liability"). Section 114(b) prohibits a party from receiving the same

recovery under both CERCLA and a comparable state or federal statute, but this provision does not prohibit a court from considering payments from third parties as either a general equitable consideration or under the rubric of double recovery.

Plaintiffs also argue that Defendant "conflates *benefits* Plaintiffs might receive relating to the Site's remediation with actual *reimbursement* for costs incurred in remediating the Site," and that only the latter, if any, should be characterized as double recovery. Although the Second Circuit's discussion of the collateral source rule was in the context of an insurance payment, its reasoning that CERCLA prohibits a party from receiving a windfall suggests that, in some instances, indirect payments that compensate a plaintiff for response costs may reduce a plaintiff's recovery. *See FirstEnergy Corp.*, 766 F.3d at 238. This view is further supported by the Second Circuit's affirming allocations of response costs that "took into account the fact that [a current property owner] would benefit from the increased property value after remediation . . . ." *Id.* at 241. Although the increased property value did not result in a dollar-for-dollar offset in that case, it demonstrates that allocation decisions are necessarily fact-intensive inquiries in order to achieve CERCLA's goal of ensuring that responsible parties are allocated their fair share.

### E. Admissibility of Defendant's Settlement Agreements

Defendant moves to "strike" the settlement agreements that are Exhibits 3, 4 and 5 to the declaration in support of Plaintiffs' motion, dated February 27, 2015. Defendant is correct that the documents are not properly considered on this motion.

First, these documents are not properly considered on this Rule 12(c) motion for judgment on the pleadings because the documents are not integral to or incorporated by reference in the pleadings.

Second, Federal Rule of Evidence 408(a) provides that settlement agreements are not admissible "either to prove or disprove the validity or amount of a disputed claim," but this evidence may be admitted "for another purpose, such as proving a witness's bias or prejudice [or] negating a contention of undue delay . . . ." Fed. R. Evid. 408(a)-(b).  Plaintiffs concede that these settlement agreements are inadmissible to show that Defendant is responsible for the portion of remediation costs reflected in the agreements.  Plaintiffs instead assert that the documents are admissible to "illuminate ConEd's state of mind" and "to rebut ConEd's implicit claim that assigning it a share of the cleanup costs is somehow unfair . . . ."  These arguments are unpersuasive because ConEd's state of mind as reflected in each agreement is irrelevant here, even taking an expansive view of equitable considerations, which Plaintiffs otherwise resist.  Each agreement is a product of the unique circumstances and negotiations at the time of the agreement.  None of these is a proxy for the equitable allocation of remediation expenses.  Accordingly, these settlement documents are not considered on this motion.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial judgment on the pleadings is GRANTED in part and DENIED in part as follows:

- Plaintiffs' motion that Defendant be found to be a liable party within the meaning of CERCLA § 107(a) is GRANTED;

- Plaintiffs' motion that Defendant be found liable for at least 90 percent of Plaintiffs' remediation costs is DENIED; and

- Plaintiffs' request that Defendant's double recovery argument be found to fail as a matter of law is DENIED.

Defendant's motion to strike Exhibits 3, 4 and 5 to the declaration in support of Plaintiffs' motion dated February 27, 2015, is GRANTED.

SO ORDERED.

Dated: August 28, 2015
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

15